OPINION
{¶ 1} Defendant-appellant, Edwin Greitzer ("Greitzer"), appeals from the judgment of the Portage County Court of Common Pleas, convicting him on Count One of Trafficking in Drugs, a fourth-degree felony in violation of R.C. 2925.03(A) and (C)(4)(b), including the statutory enhancement for selling within 1,000 feet of a school; Count Two of Trafficking in Drugs, a fourth degree felony, in violation of R.C. 2925.03(A) and (C)(4)(c); Count Three of Trafficking in Drugs, a felony of the second degree, in violation of R.C. 2925.03(A) and (C)(4)(e); Count Four of Preparation of Drugs for Sale, a felony of the second degree, in violation of R.C. 2925.03(A) and (C)(4)(e); and Count Five of Possession of Cocaine, a felony of the second degree, in violation of R.C. 2925.11(A) and (C)(4)(d). Greitzer also appeals his sentencing related to these convictions. For the foregoing reasons, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.
 {¶ 2} On January 6, 2003, the Portage County Grand Jury returned a five count indictment against Greitzer. The charges stemmed from an investigation by the Portage County Sheriff's Intelligence Unit ("SIU"), which employed Ken Dippel ("Dippel") as a confidential informant. Dippel had reported to agents of the SIU, based on a conversation with Greitzer's girlfriend, Deanna Cross ("Cross") that Greitzer had been selling crack cocaine from his residence, located in Kent, Ohio. Based upon this information, agents of the SIU, through Dippel, arranged a series of three controlled drug buys over a four day period between Greitzer, and Deputy Palozzi, ("Palozzi") an SIU undercover narcotics agent. The events surrounding each controlled drug buy were secretly recorded by the SIU from a transmission via a wire worn either by Palozzi or Dippel. These transmissions were monitored and recorded by SIU officers involved in the investigation.
 {¶ 3} On November 19, 2002, Palozzi made the first buy when he purchased.82 grams of crack cocaine from Greitzer for $100. This buy took place in Palozzi's vehicle in a Wendy's restaurant parking lot. The Wendy's restaurant was located within 1,000 feet of Brimfield Elementary School. Palozzi made the second buy on November 20, 2002, when he purchased 2.98 grams of crack cocaine from Greitzer for $260. The third buy, which occurred on November 22, 2002, was a "buy-bust" involving a purchase of 11.54 grams of crack cocaine for $700. This took place at the Indian Valley Apartment Complex in the City of Kent. The fourth count was related to the packaging for sale of the crack cocaine related to the November 22 possession charge. The possession charge relates to the crack cocaine found pursuant to a consent search of Greizer's room, which was conducted subsequent to his arrest on November 22, 2002.
 {¶ 4} On August 1, 2003, following a three day trial, the jury returned a guilty verdict on all five counts. On September 15, 2003, Greitzer was sentenced to twelve months on Count One; twelve months on Count Two; six years on Count Three; six years on Count Four; and six years on Count Five, to run concurrently. In addition, the court fined Gretizer $7,500 each on Counts Three, Four and Five, for a total fine of $22,500.
 {¶ 5} Greitzer timely appealed, asserting eleven assignments of error:
 {¶ 6} "[1.] Trial counsel rendered constitutionally deficient assistance in violation of the defendant-appellant'sSixth Amendment rights.
 {¶ 7} "[2.] Prosecutorial and police misconduct in violation of the defendant-appellant's Fifth Amendment right to the due process of law and his right to a fair trial.
 {¶ 8} "[3.] The trial court erred in admitting into evidence completely inaudible tape recorded conversations in violation of the defendant-appellant's right to the due process of law and a fair trial.
 {¶ 9} "[4.] The defendant-appellant was twice put in jeopardy in violation of his Sixth Amendment rights.
 {¶ 10} "[5.] The evidence was insufficient to sustain a verdict in Count One that included the Schoolyard Specification.
 {¶ 11} "[6.] The trial court plainly erred when it failed to instruct the jury that a mens rea of recklessness was an essential element of the Schoolyard Specification attendant to Count One.
 {¶ 12} "[7.] The trial court erred when it denied Mr. Greizer's motion for a new trial on the basis that the evidence presented in support of the motion was known to him at the time of trial.
 {¶ 13} "[8.] The trial court improperly sentenced Mr. Greitzer to more than the minimum term of imprisonment when its sentence was based on a finding that Mr. Greitzer engaged in criminal activity not found by the jury and not admitted by Mr. Greitzer.
 {¶ 14} "[9.] The trial court failed to adequately ensure that its total sentence was proportionate to sentences being given to similarly situated offenders who have committed similar offenses.
 {¶ 15} "[10.] The trial court improperly included a term of post-release control in its journal entry memorializing the sentence imposed, despite not having made post-release control a part of the sentence it imposed in open court.
 {¶ 16} "[11.] Mr. Greitzer received the ineffective assistance of counsel in violation of his rights under the Sixth
and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
 {¶ 17} For the purposes of judicial economy, Greitzer's assigned errors will be discussed out of order and consolidated, where applicable.
 {¶ 18} In his third assignment of error, Greitzer asserts that the trial court erred by admitting into evidence "completely inaudible" tape recorded conversations in violation of his right to a fair trial. The tapes at issue were created by police during the three drug buys and recorded conversations which occurred during each of the transactions. Greitzer maintains that the trial court abused its discretion in admitting the audiotapes, since the tapes were so inaudible that a trained court reporter hired by the defense was unable to transcribe the tapes created on November 19 and November 20, 2002, "due to excessive amounts of inaudible and indistinguishable audiotape," and merely served to "bolster the testimony of the state's witnesses" at trial. We disagree.
 {¶ 19} Evidentiary rulings are within the discretion of the trial court and will not be overturned absent a clear abuse of discretion whereby the defendant has suffered material prejudice.State v. Long (1978), 53 Ohio St. 2d 91, 98.
 {¶ 20} An abuse of discretion consists of more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Berk v. Matthews
(1990), 53 Ohio St.3d 161, 169 (citation omitted). Reversal, under an abuse of discretion standard is not warranted merely because appellate judges disagree with the trial judge or believe the trial judge erred. Id. Reversal is appropriate only if the abuse of discretion renders "the result * * * palpably and grossly violative of fact and logic [so] that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." State v. Jenkins (1984),15 Ohio St.3d 164, 222 (citation omitted).
 {¶ 21} With respect to the admission of audiotapes at trial, audiotapes must be "authentic, accurate and trustworthy." Statev. Gotsis (1984), 13 Ohio App.3d 282, at paragraph one of the syllabus. "In determining whether to admit tape recordings, the trial court must assess whether the unintelligible portions are so substantial as to render the recordings as a whole
untrustworthy." Id. (emphasis added). Furthermore, "[i]t is not an abuse of discretion for the trial court to admit into evidence tape recordings containing inaudible portions, when their authenticity, accuracy and trustworthiness are established by extensive, uncontradicted testimony as to the recording and custody of the tapes and the content of the conversations recorded." Id. at paragraph two of the syllabus.
 {¶ 22} In the instant matter, the prosecution used testimony from Detective Sergeant James Carozzi ("Carozzi"), who monitored and operated the recording device used during each of the three buys. In his testimony, Carozzi explained how the particular recording device operated, authenticated the tapes, testified as to their accuracy, explained how the tapes had not been altered and could not be altered after recording, and stated the means by which the tapes were securely stored prior to trial. Carozzi then discussed the technical limitations of the recording equipment, including factors which might affect the quality of the recordings.
 {¶ 23} Moreover, the tape recordings at issue merely corroborated the testimony of Palozzi, who was present during each transaction, and subject to cross-examination as to the content of the conversations he had with Greitzer regarding each transaction. In addition, Dippel, who was called as a defensewitness, also testified as to the content of the conversations captured by the recordings. A tape recording which cannot be transcribed due to certain inaudible portions is not automatically rendered inadmissible, if it is relevant to corroborate the testimony of witnesses who are subject to cross-examination. State v. Dello (Dec. 16, 1994), 11th Dist. No. 93-L-075, 1994 Ohio App. LEXIS 5705, at *11-*14. Having reviewed the content of the tape recordings, this court finds that, while the recordings contained certain inaudible portions, substantial portions of the tapes were audible. The tapes contained extensive drug conversation including how to cook up crack cocaine and the going rates for cocaine. On the November 19, 2002 tape, the seller introduces himself as "Eddie." Therefore, the tapes had some probative evidentiary value. The trial court did not abuse its discretion by admitting the tapes into evidence. Greitzer's third assignment of error is without merit.
 {¶ 24} In his fourth assignment of error, Greitzer claims he was twice put in jeopardy by being convicted and sentenced for both possession of crack cocaine under R.C. 2925.11(A) and (C)(4)(d) and for preparing for distribution the "same quantity of crack cocaine" under R.C. 2925.03(A) and (C)(4)(e), in violation of his constitutional rights. Greitzer essentially argues that at least one of his convictions for a quantity of crack cocaine exceeding ten grams represents a "double counting of the crack cocaine he was actually involved with" and, therefore, must be reversed. We disagree.
 {¶ 25} "The guarantees against double jeopardy contained in Section 10, Article I of the Ohio Constitution, and theFifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protect against multiple punishments for the same offense." State v. McCoy
(Nov. 9, 2001), 1st Dist. Nos. C-000659, C-00660, 2001 Ohio App. LEXIS 5031, at *14 citing North Carolina v. Pearce (1969),395 U.S. 711. In order to effectuate these protections, the Ohio General Assembly enacted R.C. 2941.25, which provides as follows:
 {¶ 26} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similarimport, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."
 {¶ 27} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." (Emphasis added).
 {¶ 28} The Supreme Court of Ohio established a test for determining whether offenses are allied pursuant to R.C. 2941.25: First, a court must compare the elements of each offense, in theabstract, and determine if the crimes correspond to such a degree that the commission of one crime will necessarily result in the commission of the other. State v. Sanders, 11th Dist. No. 2003-P-0072, 2004-Ohio-5629, at ¶ 49, citing State v.Rance, 85 Ohio St.3d 632, 638, 1999-Ohio-291.
 {¶ 29} In the instant case, the three charges relating to the events of November 22, 2002, involve two separate quantities of crack cocaine. The first was in the amount of 11.54 grams, which was found underneath the visor of Greitzer's vehicle during the buy-bust. This amount corresponds with the charge in Count Three. The second consisted of separate quantities of crack cocaine, which were recovered from Greitzer's room during a consent search. The total weight of the crack cocaine found in the search of Greitzer's room was 13.13 grams, according to testimony adduced at trial from Detective Nicolino ("Nicolino"), who conducted the search of Greitzer's room. Nicolino stated the crack cocaine was found in "several different packages," including loosely contained in "a breath mint container", "wrapped in plastic, the little baggie tied," and one "larger chunk" in a "glass — I believe a baby jar." Greitzer's argument on appeal attempts to create confusion between which amount in excess of ten grams was the subject of Count Four. Were the amount "packaged for sale" the same as that offered for sale, Greitzer would have a colorable double jeopardy argument. However, Nicolino's testimony that the multiple packages found in Greitzer's room meant that "they are packaged for sale, split up, maybe somebody already ordered up and he had the weights split for distribution," along with the testimony of Dippel, who told Greitzer that he "sold a lot of cocaine," make it clear that the crack cocaine found in Greitzer's room was also packaged for sale.
 {¶ 30} Finally, it is well-established that trafficking in drugs under R.C. 2925.03 and possession of drugs under R.C.2925.11 are not allied offenses of similar import. Sanders,2004-Ohio-5629, at ¶ 49; State v. Burnett (Mar. 20, 1997), 8th Dist. No. 70618, 1997 Ohio App. LEXIS 1105, at *13 (holding that a defendant may be convicted and sentenced for both possession and trafficking of the same physical quantity of drugs under R.C.2925.03(A)(2) and R.C. 2925.11); State v. Daanish (Jan. 6, 1994), 8th Dist. No. 64514, 1994 Ohio App. LEXIS 7, at *12-*13;McCoy, 2001 Ohio App. LEXIS 5031, at *16-*17. Greitzer's fourth assignment of error is without merit.
 {¶ 31} In his first assignment of error, Greitzer claims that his defense counsel was ineffective for failing to conduct an adequate pre-trial investigation. Greitzer maintains that had defense counsel attempted to interview the residents of the boarding house, he would have discovered and called Dodie Shingleton ("Shingleton"), as a "key defense witness." Shingleton claimed to be present when Cross, whom Greitzer also describes as a "confidential informant," allegedly planted drugs in his room on the day of his arrest.
 {¶ 32} The United States Supreme Court adopted a two-part test for determining whether trial counsel was ineffective: "First, the defendant must show that counsel's performance was deficient," meaning that counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed by theSixth Amendment." Strickland v. Washington (1984),466 U.S. 668, 687. "Second, the defendant must show that the deficient performance prejudiced the defense." Id.
 {¶ 33} "[T]he proper standard for attorney performance is that of reasonably effective assistance * * * [and] the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. A court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. at 689. Thus, a defendant "must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id., quoting Michel v. Louisiana (1955),350 U.S. 91, 101. "Debatable trial tactics generally do not constitute a deprivation of effective counsel." State v.Phillips, 74 Ohio St.3d 72, 85, 1995-Ohio-171.
 {¶ 34} "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland,466 U.S. at 691. However, "[d]ecisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics. The mere failure to subpoena witnesses for a trial is not a substantial violation of defense counsel's essential duty absent a showing of prejudice." State v. Coulter (1992),75 Ohio App.3d 219, 230.
 {¶ 35} "To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 229. Reversal of a conviction, therefore, places the burden on the defendant to show that counsel's deficient performance raises a reasonable probability that, but for counsel's errors, the result of the trial would have been different. See, State v. Bradley (1989), 42 Ohio St.3d 136, 142
(citation omitted); State v. Henderson, 11th Dist. No. 2001-T-0047, 2002-Ohio-6715, at ¶ 13 (citation omitted).
 {¶ 36} Reviewing the record, we find that trial counsel made the strategic decision to set forth a defense of entrapment. To this end, defense counsel chose to subpoena, but did not call, Cross as a defense witness. Instead, the defense called Dippel, who was subpoenaed as a witness for the prosecution, who testified that he was aware that Cross had, in the past, hid crack in Greitzer's home. Courts must be highly deferential to counsel's performance and will not second-guess trial strategy decisions. State v. Carter, 72 Ohio St.3d 545, 558,1995-Ohio-104. Furthermore, since the jury was aware, through Dippel's testimony, of the possibility that some of the crack found in the apartment at any given time might not be Greitzer's and could consider and weigh this evidence, Greitzer has failed to demonstrate that the counsel's decision to forego additional investigation was constitutionally ineffective. Greitzer's first assignment of error is without merit.
 {¶ 37} In his second assignment of error, Greitzer contends that the alleged planting of drugs by Cross, prior to Greitzer's arrest on November 22, 2002, are bad acts that should be imputed to the police, and furthermore alleges prosecutorial misconduct for a failure to disclose Dippel, as an agent of the police, was aware that Cross occasionally would hide drugs at Greitzer's apartment and then go back and pick them up later.
 {¶ 38} With respect to Greitzer's allegations of prosecutorial misconduct, there is no evidence in the record supporting the assertion that Dippel either was aware that Cross had planted drugs in Greitzer's apartment on the day of the arrest, or that the prosecution did not inform defense counsel that Dippel knew that Cross hid drugs in Greitzer's apartment on occasion. On the contrary, the fact that Dippel was called by the defense and testified to the fact that Cross sometimes hid drugs at Greitzer's apartment, belies Greitzer's assertion that the prosecution did not make defense counsel aware of this fact.
 {¶ 39} Greitzer's argument that Cross acted as a "confidential informant" on behalf of the police is even more tenuous. The basic test to determine whether an agency relationship exists between two parties is "whether the alleged principal had the right of control over the alleged agent, and whether their alleged agent's actions were directed toward the principal's objectives." Woodworth v. Huntington Nat'l Bank
(Dec. 7, 1995), 10th Dist. No. 95APE02-219, 1995 Ohio App. LEXIS 5424 at *10, citing Hanson v. Kynast (1986), 24 Ohio St.3d 171, paragraph one of the syllabus. Under this test, there is absolutely no evidence in the record to support an agency relationship between Cross and the SIU.
 {¶ 40} Greitzer cites to Dippel's testimony that he called Cross on the day of the buy-bust and asked her to call Greitzer on the telephone, but there is no evidence that he ever directed Cross to plant crack cocaine in Greitzer's apartment or to act in any way in furtherance of the investigation against Greitzer. In fact, Dippel testified that he "never let [Cross] know I was dealing with [Greitzer]. She likes to run her mouth and it's dangerous." Greitzer's second assignment of error is without merit.
 {¶ 41} Greitzer's seventh assignment of error is related to his first and second assignments of error. Greitzer argues that the trial court erred in denying his motion for a new trial on the basis that the evidence presented in support of the motion was known to him at the time of the trial.
 {¶ 42} Crim.R. 33(A) governs the grounds for granting a new trial upon motion by the defendant. To warrant the granting of a motion for new trial, based upon newly discovered evidence, the defendant must show that the new evidence (1) is likely to change the result of the trial if a new trial is granted; (2) has been discovered since the trial; (3) could not, within the exercise of due diligence, have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative of other evidence, and (5) does not merely impeach or contradict the former evidence. State v. Nahhas, 11th Dist. No. 2001-T-0045, 2002-Ohio-3708, at ¶¶ 11-17, citing State v. Petro (1947),148 Ohio St. 505, at the syllabus. The evidence must meet all six criteria to properly be classified as new evidence. Nahhas,
2002-Ohio-3708, at ¶ 26. An appellate court reviews the trial court's allowance of a motion for new trial on the grounds of newly discovered evidence under an abuse of discretion standard, and in the absence of a clear showing of abuse, the trial court's decision will not be disturbed. State v. Williams (1975),43 Ohio St.2d 88, at paragraph two of the syllabus.
 {¶ 43} In the case sub judice, a hearing was held on the affidavit submitted by Shingleton, in which she stated she observed Cross planting drugs in Greitzer's apartment and that Cross had made the statement that she was doing it to "get even with Ed." The trial court determined that the defense clearly had Cross under subpoena and could have called her as a witness, and there was also a clear reference during the trial that Cross occasionally hid her drugs in Greitzer's apartment. The trial court determined, therefore, that the defense either used or referred to this evidence during trial, and therefore it was not newly discovered, because the third factor was not satisfied. We find that the court did not abuse its discretion in denying Greitzer's motion for a new trial. Greitzer's seventh assignment of error is without merit.
 {¶ 44} In his fifth assignment of error, Greitzer argues that based upon the Ohio Supreme Court's recent holding in State v.Lozier, 101 Ohio St.3d 161, 2004-Ohio-732, the state's evidence was insufficient to sustain the sentencing enhancement in Count One based upon the "schoolyard specification" of R.C. 2925.03(A) and (C)(4)(b). Lozier held that "[t]he culpable mental state of recklessness applies to the offense of trafficking [in drugs] `in the vicinity of a school' * * *." 101 Ohio St.3d 161, at the syllabus. Greitzer concedes that the state's evidence was sufficient to sustain a guilty verdict to the underlying charge that he sold less than one gram of cocaine on November 19, 2002. However, Greitzer maintains there was insufficient evidence, as a matter of law, to elevate his underlying crime from a fifth degree to a fourth degree felony. We agree.
 {¶ 45} A challenge on the basis of sufficiency of the evidence is predicated on whether the state has presented evidence for each element of the charged offense. State v.Barno, 11th Dist. No. 2000-P-0100, 2001-Ohio-4319, 2001 Ohio App. LEXIS 4280, at *16. The relevant inquiry when testing the sufficiency of the evidence is whether, after reviewing the evidence and the inferences drawn from it in the light most favorable to the prosecution, any rational trier of fact could find all elements of the offense proven beyond a reasonable doubt. Id., citing State v. Jones, 91 Ohio St.3d, 335, 345,2001-Ohio-57.
 {¶ 46} A challenge to the sufficiency of the evidence raises a question of law; thus, an appellate court is not permitted to weigh the evidence when making this inquiry. State v. Schlee
(Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13 (citations omitted). Finally, a reviewing court should not reverse a verdict if sufficient evidence exists from which a trier of fact could reasonably conclude that all elements of an offense were proven beyond a reasonable doubt. Id. at *14. (Citation omitted).
 {¶ 47} Appellate courts have held that any factor that serves to elevate the degree of a crime is not a sentencing enhancement, but rather an element of the crime, which must be proven beyond a reasonable doubt. See, State v. Cole (1994),94 Ohio App.3d 629, 633 (holding that specifications which elevate a crime from a misdemeanor to a felony are elements of a crime, and not penalty enhancements.) cf. State v. Allen (1987),29 Ohio St.3d 53, 54-55 (holding that where the existence of a fact enhances the penalty for an offense, but does not elevate the degree of the offense, the fact is not an essential element which need not be alleged in the indictment or proved). Thus, the schoolyard specification is an element of the crime, which must be proved beyond a reasonable doubt to elevate the crime of trafficking in cocaine from a fifth degree felony under R.C. 2925.03(C)(4)(a), to a fourth degree felony, under R.C. 2925.03(C)(4)(b). See,State v. Brown (1993), 85 Ohio App.3d 716, 722 (holding that the finding of "within one thousand feet of the boundaries of any school premises" is an essential element of the state's case-in-chief which must be proved beyond a reasonable doubt before an enhanced penalty can be imposed.)
 {¶ 48} The Supreme Court of Ohio's opinion in Lozier was released on March 3, 2004, while this appeal was pending, but subsequent to Greitzer's trial and conviction on Count One, which contained the schoolyard specification. At the time of Greitzer's trial, the majority of appellate courts in Ohio that had decided the issue of the culpable mental state attendant to the schoolyard specification under R.C. 2925.03, treated a violation of the specification as a strict liability offense. See, Statev. Harris (1993), 89 Ohio App.3d 147; State v. Altick, (1992),82 Ohio App.3d 240; State v. Rippey (Feb. 7, 1996), 9th Dist. No. 95CA006106, 1996 Ohio App. LEXIS 373; State v. Rogers (Apr. 14, 1995), 9th Dist. No. 19176, 1999 Ohio App. LEXIS 1735, but see, State v. Lozier, 5th Dist. No. 01 CA 21, 2002-Ohio-1671, 2002 Ohio App. LEXIS 1640, at *11 (holding that the applicable degree of culpability with regard to the schoolyard specifications of R.C. 2925.03 is knowingly). However, the Ohio Supreme Court had certified the conflict between the appellate districts, but had not yet decided the issue when Greitzer's trial was held in July and August of 2003. State v. Lozier,98 Ohio St.3d 1501, 2003-Ohio-1439; see also, 96 Ohio St.3d 1446,2002-Ohio-3512.
 {¶ 49} Following the Supreme Court's holding in Lozier, the schoolyard specification now requires that a jury find beyond a reasonable doubt that a defendant recklessly violated R.C.2925.03(A) and (C)(4)(b). R.C. 2901.22(C) states that a person's act is reckless with respect to circumstances when, "with heedless indifference to the consequences, he perverselydisregards a known risk that such circumstances are likely toexist." (Emphasis added).
 {¶ 50} It is well-settled in Ohio that when a decision of our state supreme court overruling a prior rule of law is released during the pendency of an appeal, application of the new rule is not considered retrospective, and the new rule is applicable to all active cases pending as of the announcement date. State v.Evans (1972), 32 Ohio St.2d 185, 188, citing State v. Lynn
(1966) 5 Ohio St.2d 106, 108; State v. Poling (May 17, 1991), 11th Dist. No. 88-T-4112, 1991 Ohio App. LEXIS 2294, at *11-*12;Lamendola v. Beatty (Mar. 29, 1991), 11th Dist. No. 90-P-2159, 1991 Ohio App. LEXIS 1412, at *3-*4. Thus, the Lozier rule dictates that it was the prosecution's burden to prove, beyond a reasonable doubt, that Greitzer, recklessly "disregarded a known risk" that he was selling crack cocaine within 1,000 feet of a schoolyard.
 {¶ 51} The state did not offer any evidence relating to whether Greizer was aware that Brimfield Elementary was nearby. Moreover, there was evidence at trial that the Wendy's restaurant was chosen as a location by Dippel and not Greitzer. Since the prosecution failed to sustain their burden of proof underLozier with respect to the element of recklessly disregarding aknown risk that the sale took place within 1,000 feet of a schoolyard, Greitzer's fifth assignment of error has merit. This court reverses and orders the trial court to vacate Greitzer's conviction on Count One under the schoolyard specification of R.C. 2925.03(A)(C)(b), and enter judgment on the underlying conviction for selling or offering to sell cocaine in an amount less than one gram, under R.C. 2925.03(A)(C)(a).
 {¶ 52} In his sixth assignment of error Greitzer asserts that the trial court committed plain error and abused its discretion when it failed to instruct the jury that it must find, beyond a reasonable doubt, that Greitzer acted recklessly regarding selling crack cocaine in close proximity to a school. We disagree.
 {¶ 53} The test for "plain error" is enunciated under Criminal Rule 52(B). In order for Crim.R. 52(B) to apply, a reviewing court must find that (1) there was an error, i.e., a deviation from a legal rule; (2) that the error was plain, i.e., that there was an "obvious" defect in the trial proceedings; and (3) that the error affected "substantial rights," i.e., affected the outcome of the trial. State v. Barnes, 94 Ohio St.3d 21,27, 2002-Ohio-68 (citations omitted). Moreover, "[t]he decision to issue a particular jury instruction rests within the sound discretion of the trial court." State v. Huckabee (Mar. 9, 2001), 11th Dist. No. 99-G-2252, supra, at *18 (citation omitted).
 {¶ 54} As previously mentioned, the issue of the culpable mental state required to violate the schoolyard specification of R.C. 2925.03 was a settled issue prior to the Fifth District's decision in Lozier, and the Ohio Supreme Court's decision to certify and resolve the conflict created by the Fifth District's ruling. Until that time, the appellate courts in Ohio that had addressed this issue unanimously held that the schoolyard specification was strict liability. Furthermore, the appellate court in Lozier concluded that knowledge was the required mens rea for the schoolyard specification. 2002 Ohio App. LEXIS 1640, at *13. Thus, there was no error in the trial court's failure to instruct the jury that recklessness was the required mens rea for the schoolyard specification. Thus, the trial court did not act in an unreasonable, arbitrary or unconscionable manner by not providing jury instructions on this issue. Greitzer's sixth assignment of error is without merit.
 {¶ 55} For the same reasons as listed in Greitzer's sixth assignment of error, his defense counsel was not ineffective for failing to specifically challenge "the sufficiency of the evidence" or in failing to "request a jury instruction regarding criminal intent" on Count One. "Appellate counsel is not responsible for accurately predicting the development of the law in an area marked by conflicting holdings." State v. Harvey
(Jul. 7, 1998), 8th Dist. No. 71774, 1998 Ohio App. LEXIS 3139, at *6 (citation omitted). Greitzer's eleventh assignment of error is without merit.
 {¶ 56} In his eighth, ninth, and tenth assignments of error, Greitzer challenges his sentence.
 {¶ 57} Pursuant to R.C. 2953.08(G)(2), this court reviews a felony sentence de novo. State v. Gibson, 11th Dist. No. 2002-T-0055, 2003-Ohio-5695, at ¶ 68. In doing so, we conduct a meaningful review of the imposition of sentence. State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, at ¶ 10. "`Meaningful review' means that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for resentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." Id., citing R.C. 2953.08.
 {¶ 58} In his eighth assignment of error, Greitzer asserts that the court based this finding on the "impermissible" factual premise that he had new charges pending against him at the time of his sentencing. Greitzer additionally argues that as a person who has not previously been imprisoned, he was entitled to the presumption of minimum sentences on each count, and that the court's finding that a minimum sentence would "demean the seriousness of the offense" violated his Sixth Amendment right to trial by jury under the rule of Apprendi v. New Jersey (2000),530 U.S. 466 and Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L. Ed. 2d 403. We disagree.
 {¶ 59} R.C. 2929.14(A) provides the relevant penalty ranges with respect to felony sentencing, and provides, in relevant part:
 {¶ 60} "For a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years." R.C. 2929.14(A)(2).
 {¶ 61} "For a felony of the fourth degree, the prison term shall be six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months." R.C.2929.14(A)(4).[1]
 {¶ 62} In Ohio, sentencing law carries with it a presumption that a defendant who has not previously served a prison term should receive the minimum statutory term. State v. Stambolia,
11th Dist. No. 2003-T-0053, 2004-Ohio-6945, at ¶ 31. However, this presumption is rebuttable if the court makes a finding, on the record, that "the shortest prison term will demean the seriousness of the conduct or will not adequately protect the public from future crime by the offender." Id., quoting State v.Edmonson, 86 Ohio St.3d 324, 325, 1999-Ohio-110; Comer,2003-Ohio-4165, at ¶ 26; R.C. 2929.14(B)(2).
 {¶ 63} Moreover, under R.C. 2929.14(B)(2), a trial court is not required to "give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." Edmonson, 86 Ohio St.3d at 326. The word "finds," as used in R.C. 2929.14(B) merely requires that the court "note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." State v.Aponte, 11th Dist. No. 2001-L-097, 2002-Ohio-3374, at ¶ 10, citing Edmonson, 86 Ohio St.3d at 326.
 {¶ 64} In our review of the record, we find that the trial court made the statutory finding required. The court specifically stated with respect to Count One that, "in analyzing the factors set forth in R.C. 2929.13(C), the Court would find that none of the more serious factors apply. In analyzing the recidivism factors, the court would make the following specific findings: That the defendant does have a history of criminal conviction; that he's not responded favorably to sanctions imposed; that while out on bond on these charges, he was charged with four additional charges * * * of trafficking in cocaine, or possession of cocaine." The court considered substantially the same factors with respect to the remaining counts. Although these statements were couched in the terms of "findings," they are more accurately characterized as evidence that the court analyzed the factors under R.C. 2929.12 and R.C. 2929.13, before making its finding under R.C. 2929.14(B).
 {¶ 65} We do not find the court's consideration of the pending cases against Greitzer improper. "[A]ppellate courts have held that a trial court may not consider a crime neither chargednor proven when it is sentencing an offender." Stambolia,2004-Ohio-6945, at ¶ 26 (citations omitted). However, this phrase is written in the disjunctive, which means that conversely, a trial court may look at crimes that have been either chargedor proven. See State v. Burton (1977), 52 Ohio St.2d 21, 23
("a sentencing court may weigh such factors as arrest for other crimes"); Maple Heights v. Dickard (1986), 31 Ohio App.3d 68, paragraph two of the syllabus ("in sentencing, a trial court may weigh such factors as prior arrests and charges, even though such arrests and charges did not lead to convictions"); State v.English (1991), 77 Ohio App.3d 371, 386 ("[i]n sentencing, a trial court may consider information which would have been inadmissible at trial * * * including information regarding other arrests, regardless of whether convictions resulted") (citations omitted). We see no logical reason why the court could not also consider arrests subsequent to the arrest for which the defendant is convicted, particularly when determining the defendant's likelihood of recidivism.
 {¶ 66} After making the statutorily enumerated finding under R.C. 2929.14(B), the trial court sentenced Greitzer to twelve months on each of the two fourth degree felonies; and six years on each of the two second degree felonies, to be served concurrently.
 {¶ 67} With respect to Greitzer's second argument, this court has determined that Blakely does not apply to Ohio's sentencing scheme, when the trial court makes a finding that "the minimum sentence * * * would demean the seriousness of the offense * * *." State v. Murphy, 11th Dist. No. 2003-L-049, 2005-Ohio-412, at ¶¶ 54-60. "The General Assembly has made it clear that the R.C. 2929.14(B)(2) findings * * * are sentencing factors." State v. Rupert, 11th Dist. No. 2003-L-154, 2005-Ohio-1098, at ¶ 42. Moreover, "[a]s a criminal defendant has never enjoyed a Sixth Amendment right to jury sentencing, the penalty phase of a criminal trial does not implicate the full panoply of rights guaranteed by due process." Id. at ¶ 38. "Thus, judicial fact finding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial and reasonable doubt components of the Fifth and Sixth Amendments." Id. See, also,Murphy, 2005-Ohio-412, at ¶ 56. Since the sentences imposed by the trial court were within the relevant statutory range for each offense, Blakely is not implicated. For the foregoing reasons, Greitzer's eighth assignment of error is without merit.
 {¶ 68} In his ninth assignment of error, Greitzer alleges that the trial court "failed in its responsibility to ensure consistency and proportionality" since it "articulated nothing in the record to suggest that it even considered the issue."
 {¶ 69} R.C. 2929.11(B) states, in relevant part, that "[a] sentence imposed for a felony shall be * * * commensurate with and not demeaning of the offender's conduct and * * * consistent with the sentences imposed for similar crimes committed by similar offenders." This court has held that although "`a trial court is required to engage in the analysis set forth by R.C.2929.11(B) to ensure the consistency of sentences,' a court is not required `to make specific findings on the record' in this regard." State v. Adams, 11th Dist. No. 2003-L-110, 2005-Ohio-1107, at ¶ 57 (citations omitted). As mentioned in the previous assignment of error, it is clear that the court considered the seriousness and recidivism factors in pronouncing sentence. Moreover, Greitzer points to no specific instances indicating that his sentence is not proportional to other similarly situated offenders. However, in our review of the applicable Ohio case law, we find that his sentence of six years was proportional to sentences given other offenders convicted of similar offenses. See, State v. Sieng, 10th Dist. No. 04AP-556, 2005-Ohio-1003 (defendant sentenced to seven years for one count of trafficking in cocaine, a second degree felony under 2925.03(A) and (C)(4)(e)); State v. Price, 10th Dist. No. 02-AP1215, 2003-Ohio-4764 (seven year sentence imposed on one count of trafficking in crack cocaine, a second degree felony);State v. Williams, 12th Dist. No. CA2002-09-233, 2003-Ohio-4114 (four year sentence for one count of trafficking in cocaine, a second degree felony); State v. Turner, 11th Dist. No. 2000-T-0074, 2001-Ohio-8880, (defendant sentenced to five years and four years, to be served consecutively for two counts of trafficking in crack cocaine under R.C. 2925.03(A) and (C)(4)(e)). Greitzer's ninth assignment of error is without merit.
 {¶ 70} In his tenth assignment of error, Greitzer, on the basis of the Ohio Supreme Court's holdings in State v. Jordan,104 Ohio St.3d 21, 2004-Ohio-6085, and State v. Finger,104 Ohio St.3d 157, 2004-Ohio-6390, which were released during the pendency of this appeal, asserts that the trial court improperly included a term of post-release control in its written judgment entry of sentence when no mention was made of the post-release control term in the sentencing hearing; and thus, the post-release control term must be vacated, and the case remanded for resentencing. We agree.
 {¶ 71} Jordan held that when a felony offender is sentenced to a term of imprisonment, a trial court is required to notify the offender at the sentencing hearing about post-release control and is also required to incorporate that notice into its written judgment entry imposing sentence. 104 Ohio St.3d 21, at paragraph one of the syllabus. When a trial court fails to notify an offender about post-release control at the sentencing hearing, but incorporates that notice in its written judgment entry of sentence, it fails to comply with the mandatory provisions of R.C. 2929.19(B)(3)(c) and (d), and the sentence must be vacated and the matter remanded to the trial court for resentencing. Id. at paragraph two of the syllabus; accord, State v. Peacock,
11th Dist. No. 2002-L-115, 2003-Ohio-6772, at ¶¶ 40-41. This requirement applies regardless of whether the post release control term is mandatory or discretionary. Jordan, at ¶ 4.
 {¶ 72} Our review of the sentencing transcript indicates, and the state concedes, that the trial court did not mention any post-release control term during the sentencing hearing, but included a term in its judgment entry of sentence. Therefore, Greitzer's tenth assignment of error has merit, and the case must be remanded to the trial court for resentencing.
 {¶ 73} Based on the foregoing analysis, we find that Greitzer's fifth and tenth assignments of error have merit. All of the other assignments of error are without merit. We therefore affirm in part, reverse in part and remand this matter with an order to vacate judgment as to the specification on Count One and for resentencing consistent with this Opinion.
Ford, P.J., O'Toole, J., concur.
[1] R.C. 2929.14(A)(5) states that "[f]or a felony of the fifth degree, the prison term shall be six, seven, eight, nine, ten, eleven or twelve months." We note this, since we have determined that Greitzer's fifth assignment of error has merit. As a result, the twelve month term imposed would still be in the statutory range, but it would be a maximum sentence for a fifth degree felony. On remand, since there are multiple convictions involved, a court may wish to "review what remains and reconstruct the sentence in light of the original sentencing plan." State v.Nelloms (2001), 144 Ohio App.3d 1, 6 (citations omitted); Statev. Couturier (Sep. 13, 2001), 10th Dist. No. 00AP-1293, 2001 Ohio App. LEXIS 4050, at *6.