The STATE of Ohio, Appellee,

v.

ALTICK, Appellant.

[Cite as *State v. Altick* (1992), 82 Ohio App.3d 240.]

Court of Appeals of Ohio,
Montgomery County.

No. 13254.

Decided Sept. 2, 1992.

*Lee C. Falke*, Montgomery County Prosecuting Attorney, and *Lorine M. Reid*, Assistant Prosecuting Attorney, Appellate Division, for appellee.

*Richard A. Nystrom*, for appellant.

BROGAN, Judge.

The appellant, Norman Altick, was indicted upon the charge of knowingly selling cocaine in an amount less than the minimum bulk amount within one thousand feet of a school in violation of R.C. 2925.03(C)(1). The appellant entered a plea of no contest to the indictment and was sentenced to an indefinite term of two to fifteen years.

In his sole assignment, appellant contends his conviction should be set aside because the appellant's actions do not fall within the legislative intent of the statute and thereby violate the appellant's constitutional right to due process under the United States and Ohio Constitutions.

Pursuant to plea negotiations, the state and the defendant agreed to certain stipulations of fact in exchange for the defendant's agreement to enter a no-contest plea. The prosecutor entered those stipulations into the record:

"On or about October 10th, 1991, in a residence located behind 1043 Brown Street, in Dayton, Montgomery County, Ohio, the defendant Norman C. Altick, knowingly sold a controlled substance, to-wit: crack cocaine, a Sched-

ule II drug, in an amount less than the minimum bulk amount, to-wit: point-one-three grams; that the location of the residence in which the defendant sold the crack cocaine is within one thousand feet of the boundaries of any school premises, as defined in R.C. 2925.01(R); that said school, Patterson–Kennedy School, is a school as defined in R.C. 2925.01(Q); that if the defendant were called to testify, he would state under oath that he did not know that his residence was within one thousand feet of school premises; that said sale took place inside the residence, behind a closed, locked door; and that the undercover police officer, Detective Will Wright, who purchased the crack cocaine from the defendant on October 10, 1991, is an adult male and obviously not of school age."

The appellant contends the legislature could not have intended the "schoolhouse" provision of R.C. 2925.03(C)(1) to apply to him because the defendant sold a controlled substance to an adult in the privacy of his home, and the amount of the drug sold was so small that it was unlikely to be resold to others.

Appellant suggests that the federal courts have given three reasons for the "schoolhouse" provision in the analogous federal legislation, namely Section 845a, Title 21, U.S.Code. Those reasons are: (1) reducing drug use by children, (2) keeping drugs and dealers off the streets, and (3) protecting children from the indirect dangers of drugs.

Appellant argues that a conviction under the "schoolhouse" provision under the facts of his case does not reduce drug use by school children because no school children were likely to be aware of the drug sale. Second, appellant argues he did not sell the cocaine on the street where children might pass upon their way to school. The appellant also contends there were no indirect dangers of drugs to school children because the sale occurred in a closed, locked residence after the appellant assured himself that the purchaser was an adult.

R.C. 2925.03 provides in pertinent part:

"(A) No person shall knowingly do any of the following:

"(1) Sell or offer to sell a controlled substance in an amount less than the minimum bulk amount;

" * * *

"(C) If the drug involved is any compound, mixture, preparation, or substance included in schedule I, with the exception of marihuana, or in schedule II, whoever violates this section is guilty of aggravated trafficking.

"(1) Where the offender has violated division (A)(1) of this section, aggravated trafficking is a felony of the third degree, except that aggravated trafficking is a felony of the second degree, if any of the following apply:

"(a) *The offender commits the offense on school premises, in a school building, or within one thousand feet of the boundaries of any school premises;*

" * * * *

"(c) The offender previously has been convicted of a felony drug abuse offense." (Emphasis added.)

 It is a cardinal rule of statutory construction that where the terms of a statute are clear and unambiguous, the statute should be applied without interpretation. *Wingate v. Hordge* (1979), 60 Ohio St.2d 55, 14 O.O.3d 212, 396 N.E.2d 770. Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation.

 Where the statute on its face is free from ambiguity, it is the established policy of the courts to avoid giving it any other construction than that which its words demand. It is impermissible to make an interpretation contrary to the plain and express words of the statute, the meaning of which the General Assembly must be credited with understanding. *In re Hinton's Estate* (1901), 64 Ohio St. 485, 60 N.E. 621. When the terms of the statute are unambiguous, the judicial inquiry is complete. *Rubin v. United States* (1981), 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633.

 In *United States v. Falu* (C.A.2, 1985), 776 F.2d 46, the court examined the legislative history of Section 845a, Title 21, U.S.Code, particularly the statements of Paula Hawkins, who sponsored the bill. The court concluded the federal legislation was intended to send a signal to drug dealers that their presence near schools will not be tolerated. The court added that the purpose of the statute is clear:

"Congress sought to create a drug-free zone around schools; whether it chose to do so directly or indirectly is not particularly relevant. According to its sponsor, the provision was designed to 'deter drug distribution in and around schools,' including transactions which 'take place in remote outdoor areas, at local hangouts, or *at nearby homes or apartments,*' thereby helping to 'eliminate the outside negative influences' around schools." (Emphasis added.) *Id.* at 50, quoting 130 Congressional Record S559 (Daily Ed. Jan. 31, 1984).

In *United States v. Holland* (C.A.D.C.1987), 810 F.2d 1215, 1219, certiorari denied (1987), 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854, the court found

that the schoolhouse provisions of Section 845(a), Title 21, U.S.Code did not violate the Equal Protection Clause of the United States Constitution for being overinclusive because "the consequences of such transactions inevitably flow from inside the dwellings onto the streets and contribute directly to the violent and dangerous criminal milieu Congress sought to eliminate in the proximity of schools."

While we are not favored with the legislative purpose behind Ohio's "schoolhouse" provision, we are confident the legislature intended to protect school children from the same dangers of drug activity as contemplated by Congress. The dangers of drug activity near a school and school children are self-evident. The appellant's conduct plainly violated the provisions of R.C. 2925.03(C)(1), and the legislature plainly intended to bring appellant's conduct within the ambit of that legislation. The appellant's assignment is overruled.

The judgment will be affirmed.

*Judgment affirmed.*

WILSON and GRADY, JJ., concur.