**The STATE of Ohio, Appellee**

**v.**

**HARRIS, Appellant.**

[Cite as *State v. Harris* (1993), 89 Ohio App.3d 147.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63331.

Decided Aug. 9, 1993.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *John P. Keshock,* Assistant Prosecuting Attorney, for appellee.

*Thomas M. Shaughnessy,* for appellant.

PORTER, Judge.

Defendant-appellant Kaesha Harris appeals her convictions following a jury trial for possession and sale of cocaine (R.C. 2925.03) with a schoolyard specification and possession of a criminal tool (R.C. 2923.24). Defendant claims she had no knowledge that she possessed or participated in the sale of cocaine. We find no error and affirm for the reasons discussed below.

On June 12, 1991, Cleveland detectives were alerted at about 3:30 p.m. by a reliable informant (Randolph Gilbert) that he had been successful in his attempts to set up the purchase of crack cocaine from one Eric Smith. At approximately 4:25 p.m., the detectives were in position on the Near West Side to view the drug sale and arrest those parties involved in the transaction. Before the "buy-bust" took place, Gilbert was fitted with a body transmitter so that the detectives listened as the buy progressed.

Detective Escalante took up a surveillance spot on the second floor of a building located on the corner of West 28th Street and Detroit Avenue, about one hundred to one hundred twenty feet away from where the buy eventually took place. He observed the scene and the buy through binoculars from his vantage point, as well as listening on the transmitter receiver. He saw Gilbert pull into the parking lot on the northwest corner of West 28th Street and Detroit Avenue, within one thousand feet of St. Malachi's Urban Community School.

Shortly thereafter, Eric Smith pulled into the lot. Smith spoke with Gilbert and then went to a pay phone on the corner and paged Terry Burse to bring the ordered cocaine. A few minutes later, Burse drove up in a tan Z–28 automobile with his sister, defendant Kaesha Harris, in the passenger seat. Burse got out of the car, met briefly with Smith and looked Gilbert over. He then went back to the auto and leaned in on the passenger side door next to defendant Harris. Escalante testified that Harris then pulled down her collar, reached into her shirt, took a dark object out and handed it to Burse.

Burse took this object, which later turned out to be a black sock containing 106.24 grams of cocaine, and gave it to Smith. Smith took the cocaine out of the sock, got into Gilbert's automobile and handed it to Gilbert. The detectives then moved in on the scene and made the arrests. We will address the defendant's assignments of error in the order asserted.

"I. Appellant was denied her freedom without due process of law by her conviction, which was against the manifest weight of the evidence."

■ "A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus. In *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717, the court set forth the test to be utilized when addressing the issue of manifest weight of the evidence, as follows:

"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * See *Tibbs v. Florida* (1982), 457 U.S. 31, 38, 42 [102 S.Ct. 2211, 2216, 2218, 72 L.Ed.2d 652, 659, 661]." *Martin, supra,* 20 Ohio App.3d at 175, 20 OBR at 219, 485 N.E.2d at 720.

"[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. We do not find, after a careful review of the record, that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*

The state produced two eyewitnesses to the drug transaction that gave rise to defendant's convictions. Detective Escalante testified that he saw Kaesha Harris reach into her shirt to retrieve the cocaine in a black sock which was to be sold to the informant, Gilbert. Gilbert also testified to the same scenario. The credibili-

ty of these witnesses was for the factfinder to determine. The jury knew Gilbert was an informant, had a criminal record and may have advanced his own opportunity for leniency by cooperating with police. He testified that he had never seen Harris or her brother before.

Harris' brother, Terry Burse, testified on her behalf at the time of trial. He had already pled and was sentenced for his part in the narcotics sale. He testified that his sister knew nothing about the drugs which he had asked her to hold and that he retrieved the black sock from a pocket in the door on the passenger side of his car.

Co-defendant Smith took the stand on his own behalf to explain what happened on the day in question. However, at trial he recanted his original statement and claimed that he had been tortured by the Cleveland Police Department into giving a statement as to what took place. His original statement clearly implicated Harris and described her involvement in the drug transaction. Smith related to the jury that he was told what to say in his statement during the course of his torture by the police. He then insisted that his statement was completely false, and that Kaesha Harris had no knowledge of the drug transaction which was taking place. It is understandable why the jury may have found Smith's and the brother's testimony unreliable.

Harris testified that she did not know that her brother was a drug dealer, and that she was merely going in his car to clean up his apartment. She admitted she did not know if he had a job. Yet, she knew that her brother owned the Z–28 sports car, as well as other vehicles; that he had a mobile phone which he carried around a lot; and that he had been on that very phone immediately before the drug deal went down. She also stated to the jury that her brother did in fact ask her to put the sock in her bra during the car trip over to the drug scene but she refused to do so. Despite this extraordinary request, she testified she never asked her brother what was in the sock she was asked to conceal.

There was ample evidence to support the defendant's role in the drug transaction. This assignment of error is overruled.

"II. Appellant was denied due process of law when she was convicted on evidence which was insufficient as a matter of law."

The evidence in this case was sufficient to support the convictions. According to *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis *sic.*) In Ohio, the standard for sending a question to the jury is set forth in the syllabus of *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184:

"Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

The Ohio Supreme Court has more recently held that:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

The testimony from Detective Escalante that he viewed through binoculars and listened to the whole transaction as it took place from a short distance away was sufficient in itself to go to the jury. He testified the day was sunny and clear and he had an unobstructed view from his perch of defendant's role. The defendant's cross-examination about his field of vision, truck traffic, sun visor, windshield glare, shadows, etc. go to the weight of his evidence, which was for the jury. Escalante testified that he clearly saw Harris reach into her shirt and retrieve the black sock containing the cocaine which she handed to her brother, who in turn handed it over to Smith, who then gave it to the informant, Gilbert.

Viewing this evidence in a light most favorable to the prosecution, which we are required to do, there was obviously evidence upon which a rational trier of fact could have determined that each and every element of the three charges against the appellant were met. Based upon the testimony of the detective and the informant, there was sufficient evidence that Harris played a vital part in the sale of this cocaine by possessing and concealing it on her person before the sale was completed. In addition, she had $500 on her person, which she claimed she had saved to buy a car from her very modest wages as a waitress.

The cases upon which defense counsel relies are inapposite, since in those cases the exonerated defendants were mere passengers in a car containing cocaine. Here, if the state's evidence was to be believed, the illicit drugs were concealed in her underwear until the moment of sale. The jury was justified in finding she did this with the intent to aid her brother in selling the crack cocaine.

This assignment of error is not well taken.

"III. The application of a schoolyard specification to appellant's case is a violation of appellant's constitutional right to due process."

■ R.C. 2925.03 provides in pertinent part:

"(A) No person shall knowingly do any of the following:

"(1) Sell or offer to sell a controlled substance in an amount less than the minimum bulk amount * * *;

" * * *

"(C) * * * whoever violates this section is guilty of aggravated trafficking.

"(1) Where the offender has violated division (A)(1) of this section, aggravated trafficking is a felony of the third degree, except that, if the offender commits the offense on school premises, in a school building, or within one thousand feet of the boundaries of any school premises or the offender previously has been convicted of a felony drug abuse offense, aggravated trafficking is a felony of the second degree."

Ohio's appellate courts have not yet had occasion to address a due process challenge to the "schoolyard" provision of R.C. 2925.03. However, it has been unsuccessfully challenged on equal protection grounds in *State v. Altick* (1992), 82 Ohio App.3d 240, 611 N.E.2d 863. In denying the equal protection claim, the *Altick* court relied upon the federal law counterpart of Ohio's "schoolhouse" provision, Section 845(a), Title 21, U.S.Code.

In the case *sub judice*, the appellant contends that she was denied her right to due process because the state failed to prove that she acted with knowledge or recklessness with regard to the schoolyard specification and did not know she was within one thousand feet of a school. On several occasions federal appellate courts have denied due process challenges to Section 845(a). In *United States v. Pitts* (C.A.9, 1990), 908 F.2d 458, the defendant claimed a due process violation because he did not know that there was a school within one thousand feet at the time that he made the narcotics sale. The Ninth Circuit Court of Appeals held that anyone who violates Section 845(a) knows that distribution of narcotics is illegal, although the violator may not know that the sale took place within one thousand feet of a school. In rejecting the defendant's due process claim, the court ruled that "the schoolyard statute resembles other federal criminal laws, which provide enhanced penalties or allow conviction for obviously antisocial conduct upon proof of a fact of which the defendant need not be aware." *Pitts* at 461. To the same effect, see *United States v. Lewin* (C.A.8, 1990), 900 F.2d 145, 148; *United States v. Cross* (C.A.6, 1990), 900 F.2d 66, 68–69; *United States v. Collado–Gomez* (C.A.2, 1987), 834 F.2d 280, 281.

As in these federal cases, the Ohio "schoolyard" provision is a subsection of the state's statute against trafficking in drugs, R.C. 2925.03. This subsection merely enhances the sentence of the underlying drug trafficking offense. The *mens rea* requirement is met by the knowing sale or offer to sell a controlled substance.

This fact assures that the "schoolyard" provision does not "criminalize a broad range of apparently innocent conduct." Under such circumstances, due process does not require that Kaesha Harris specifically knew that the drug sale in which she took part was conducted within one thousand feet of a school.

Nor does R.C. 2925.03(C) require that a defendant choose the site of the drug sale or actively transport herself to that location. The only act required is that the defendant took part in the sale or offer to sell a controlled substance. If the state's evidence was believed, Harris was an instrumental part in the drug transaction which gave rise to her convictions. She carried the drugs on her person and secreted them until a deal had been struck. Consequently, her convictions under Ohio's drug trafficking statute and the accompanying "schoolyard" provision were not violative of her constitutional rights.

Appellant's third assignment of error is not well taken.

*Judgment affirmed.*

NAHRA, P.J., and JAMES D. SWEENEY, J., concur.