[Cite as *State v. Brooks*, 2016-Ohio-3003.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :        Case No.   15CA3490

    vs.                              :

CRAIL BROOKS,                           :        DECISION AND JUDGMENT

                                          ENTRY

    Defendant-Appellant.             :

_____

APPEARANCES:

Timothy Young, Ohio Public Defender, and Valerie Kunze, Assistant State Public Defender, Columbus, Ohio, for Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Pamela C. Wells, Ross County Assistant Prosecuting Attorney,    Chillicothe, Ohio, for Appellee.

_____

CRIMINAL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED:5-11-16

ABELE, J.

{¶ 1} This is an appeal from a Ross County Common Pleas Court judgment of conviction and sentence. A jury found Crail Brooks, defendant below and appellant herein, guilty of (1) drug trafficking in violation of R.C. 2925.03, and (2) drug possession in violation of R.C. 2925.11. Appellant assigns the following errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "CRAIL BROOKS'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF MR. BROOKS'S RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."
>
> SECOND ASSIGNMENT OF ERROR:
>
> "CRAIL BROOKS'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF MR. BROOKS'S RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

{¶ 2} On June 5, 2014, Fayette County Sheriff's Detectives Larry McGarvey and John Warnecke participated in an undercover narcotics transaction arranged through William May, a confidential informant. May had advised the detectives to go to his Ross County residence to purchase heroin from appellant. When the detectives arrived at May's residence, they saw appellant, who was seated at the kitchen table, remove a plastic bag containing a "chunky," "rock-like substance" from his pocket and hand it to May underneath the kitchen table. May took the bag and removed the amount of heroin that the detectives had requested. May placed the heroin in a plastic bag and handed it to Detective McGarvey. Detective McGarvey turned to

give appellant the money.   Appellant, however, questioned the detectives about the lack of track marks on their arms and appeared nervous.   The detectives placed the money in front of appellant and asked, "so are we good?"   Both appellant and May stated, "yeah, we're good."  The detectives then exited the residence.

{¶ 3} As the detectives exited the residence, other detectives arrived on the scene.  Around this same time, appellant also exited May's residence.   When appellant realized that law enforcement detectives were on the scene, he returned to May's residence.   The detectives followed him and ordered both appellant and May to the ground.   One detective observed appellant throw an item toward the refrigerator.   Subsequent testing revealed that the item is a plastic bag that contained heroin.

{¶ 4} The Ross County grand jury returned an indictment that charged appellant with drug trafficking and drug possession.   Appellant entered not guilty pleas and the trial court held a jury trial.   At trial, Detective Warnecke testified that he participated in the drug transaction at May's residence.   Detective Warnecke stated that he clearly observed appellant remove a plastic bag that contained a "chunky," "rock-like substance" from his right-hand pocket and hand it to May underneath the kitchen table.   The detective explained that even though appellant handed the plastic bag to May, the detective positioned his chair to have a clear view of appellant's pocket and to observe what occurred under the table.

{¶ 5} Detective Warnecke also explained that as May and Detective McGarvey completed the transaction, appellant appeared to become uneasy and questioned Detective Warnecke why he was purchasing heroin.   Appellant also noted that the detective did not have any "track marks" on his arms.

{¶ 6} Detective Warnecke stated that the detectives placed $80 in front of appellant and a "momentary awkward silence" ensued. After the detective asked "are we good," appellant responded affirmatively. Detective Warnecke explained, however, that neither appellant nor May actually accepted the money: "It was simply set down on the table in front of [appellant]."

{¶ 7} May testified that appellant handed him the bag that contained heroin that he gave to Detective McGarvey. May stated that after appellant gave him the heroin, he removed the quantity the detectives requested and returned the remaining heroin to appellant. May further testified that when the detectives entered the residence and ordered them to the ground, May saw appellant throw the bag of heroin near the refrigerator.

{¶ 8} Detective McGarvey testified that when he and Detective Warnecke arrived at May's residence, appellant was seated at the kitchen table and the detective did not immediately see May. Detective McGarvey asked appellant whether appellant was "going to take care of [him] and [appellant] kind of looked at [him] kind of like what are you talking about." Detective McGarvey explained that appellant then called to May, and May exited a back room of the residence and sat at the kitchen table. The detective asked May, "are we still good," and May responded, "yeah, for eighty." Detective McGarvey stated that appellant then reached into his pocket and handed a plastic bag to May under the table. Immediately thereafter, May grabbed an empty plastic bag off the table, stood up, and walked to the kitchen counter where he produced the heroin. Detective McGarvey explained that he deduced that appellant handed May the heroin under the table. He related that both appellant and May had their hands under the table and when May's hand returned from beneath the table, it contained a plastic bag that contained heroin. After May handed Detective McGarvey the heroin, the detective placed the

money in front of appellant and asked, "so are we good?" Both appellant and May stated, "yeah, we're good." Afterwards, Detectives McGarvey and Warnecke left the residence.

{¶ 9} Detective McGarvey explained that as they walked outside, Ross County Sheriff's Detective Alan Lewis (the supervising detective who had been monitoring the transaction) pulled up to the residence and exited his vehicle. Detective McGarvey turned to go back into the residence and, at about the same time, appellant started walking out the door. Detective McGarvey stated that appellant looked at Detective McGarvey, saw Detective Lewis, turned, and ran towards the residence. Detectives McGarvey and Lewis identified themselves and ordered appellant to the ground. Appellant ran back inside the residence, and the detectives followed. Detective McGarvey explained that once inside the residence, appellant ran toward the refrigerator, reached in his pocket, and threw something. The detective stated that although he did not immediately see the item that appellant threw, the detectives later found a bag of heroin near the refrigerator.

{¶ 10} Detective Lewis testified that he received information from May that appellant was "dealing in the Bainbridge area." Detective Lewis stated that he had previously purchased, in an undercover capacity, a small amount of heroin from May at May's residence. After the transaction, he identified himself to May as a law enforcement officer and interviewed him. The detective explained: "We're always looking to try to move up to a bigger dealer and I was able to obtain information that showed that [appellant] was the larger dealer." The detective told May that in exchange for May's cooperation, Detective Lewis would talk to the prosecutor.

{¶ 11} Detective Lewis testified that on June 5, 2014, May advised Detective Lewis that appellant was in the area and that the undercover detectives could purchase heroin from

appellant. Detective Lewis explained that the original plan was that the undercover detectives would be able to purchase the heroin at a local bar, but the detectives were later informed that they would not be purchasing heroin at the bar. Instead, they could purchase it at May's residence.

{¶ 12} Detective Lewis also stated that after the detectives completed the operation and had secured appellant, he examined May's residence. The detective testified that he observed four twenty dollar bills on the kitchen table and a clear plastic bag that contained a brown substance near the refrigerator.

{¶ 13} After hearing the evidence, the jury found appellant guilty of both counts as charged in the indictment. The trial court then sentenced appellant to serve eight months in prison for the drug trafficking offense and thirty months for the drug possession offense, with the sentences to be served consecutively. This appeal followed.

I

SUFFICIENCY OF THE EVIDENCE

{¶ 14} In his first assignment of error, appellant asserts that the state failed to present sufficient evidence to support his convictions. In particular, appellant contends that the state did not present any evidence that he sold or offered to sell heroin. Appellant argues that the evidence demonstrates that he was merely present during the transaction and that May was the individual who offered to sell heroin to the undercover detectives, who prepared the bag containing the desired amount of heroin, and who handed the heroin to the undercover detective. Appellant further contends that the evidence fails to show that he accepted any money in exchange for the heroin. Appellant further asserts that the evidence fails to show that he

knowingly possessed heroin. Appellant observes that the officers did not discover heroin on his person when they searched him and that the evidence fails to show that he had possessed the bag of heroin that the officers discovered near the refrigerator.

{¶ 15} A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing the sufficiency of the evidence, an appellate court's inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. Thompkins, syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. E.g., Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jenks, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶ 16} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. E.g., State v. Hill, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); State v. Grant, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. State v.

Tibbetts, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); State v. Treesh, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶ 17} In the case sub judice, after our review of the record we believe that the state presented sufficient evidence to support appellant's drug trafficking and drug possession convictions.

A

DRUG TRAFFICKING

{¶ 18} R.C. 2925.03(A)(1) sets forth the offense of drug trafficking as charged in the indictment and states: "No person shall knowingly * * * [s]ell or offer to sell a controlled substance or a controlled substance analog[.]" Appellant argues that his drug trafficking conviction cannot stand because the state failed to present any evidence that he sold, or offered to sell, heroin to the undercover detectives. Instead, appellant claims that the confidential informant sold, or made the offer to sell, the heroin to the detectives.

{¶ 19} Initially, we note that R.C. 2925.01(A) incorporates the R.C. 3719.01(AA) definition of "sale" into the drug offense statutes. R.C. 3719.01(AA) provides: "'Sale' includes delivery, barter, exchange, transfer, gift, or offer thereof, and each transaction of those natures made by any person, whether as a principal, proprietor, agent, servant, or employee." This definition is broader than the common dictionary definition of "sale." State v. Adkins, 80 Ohio App.3d 211, 221, 608 N.E.2d 1152, 1159 (4th Dist.1992); accord Drug trafficking—Elements, Baldwin's Oh. Prac. Crim. L., Section 107:2 (3d ed.). "Ohio has adopted a definition of 'sale' of controlled substances that is broad in scope, calculated to include all transfers of controlled substances regardless of the presence or absence of consideration

therefor." State v. Albritton, 6th Dist. Wood No. WD♥80♥48, 1980 WL 351681, *6 (Dec. 26, 1980). Consequently, "[i]n a prosecution for offering to sell a controlled substance, the state is not required to prove that there was a sale or even that the controlled substance existed. A defendant may be convicted, even in the absence of a completed drug sale, if the defendant committed any element of drug trafficking incident to an aborted sale. * * * The term 'offer to sell' includes a person who offers to provide narcotics as a link in the chain of supply, and whether the person intends to act as agent for the seller or buyer is immaterial." Drug trafficking—Elements, Baldwin's Oh. Prac. Crim. L., Section 107:2 (3d ed.) (footnotes omitted); accord State v. Harris, 89 Ohio App.3d 147, 148-49, 623 N.E.2d 1240, 1241 (8th Dist.1993) (upholding defendant's drug trafficking conviction when she retrieved black sock from her person and handed to third person who ultimately delivered sock containing controlled substance to confidential informant). "This essentially means that a person who knowingly transfers or offers to transfer narcotics is guilty of selling or offering to sell narcotics within the meaning of R.C. 2925.03." State v. Latina, 13 Ohio App.3d 182, 187, 468 N.E.2d 1139, 1146 (8th Dist.1984).

{¶ 20} In State v. Curry, 10th Dist. Franklin No. 99AP-862, 2000 WL 675110 (May 25, 2000), the defendant asserted that the state failed to present sufficient evidence to support his drug trafficking conviction and that his conviction was against the manifest weight of the evidence when the state failed to present direct evidence that the defendant received money in exchange for drugs. In Curry, an undercover narcotics officer obtained drugs from the defendant via a third party. The officer met with the third party in an undercover capacity and informed her that he wished to purchase cocaine. The officer gave her $1,300. The third party stated that

she needed to contact her supplier. A short time later, the third party met the defendant in a parking lot. The defendant entered the third party's vehicle carrying a red and black Doritos chip bag, but left her vehicle without this bag. Shortly thereafter, the third party presented the Doritos bag to the undercover officer. Inside the bag was one ounce of cocaine. The defendant subsequently was charged and convicted of drug trafficking. On appeal, the defendant asserted that his conviction could not stand because, inter alia, no one observed money exchanged.

{¶ 21} The appellate court, however, rejected the defendant's arguments and explained:

> "We find unpersuasive defendant's contention that the evidence failed to show a 'sale' where the state's witnesses did not observe money being exchanged between Pelfrey and defendant. R.C. 2925.01(A) 'incorporates the R.C. 3719.01(EE) definition of "sale" into the drug statutes,' a definition that is 'broader than the common dictionary definition of "sale."' State v. Adkins (1992), 80 Ohio App.3d 211, 221, 608 N.E.2d 1152. R.C. 3719.01(AA) defines '[s]ale' to include 'delivery, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee.'"

Id. at *4.

{¶ 22} Similarly, in the case at bar we reject appellant's argument that his trafficking conviction cannot stand simply because he did not physically handle any money or verbally state that he would sell or offer to sell the heroin to the undercover detectives. Instead, the word "sale," as used in R.C. 2925.03(A)(1), is broadly defined to include "delivery, * * * exchange, [or] transfer." The undercover detectives testified that appellant passed, beneath the kitchen table, a plastic bag that contained a rock-like substance to May, who then removed heroin from a plastic bag and gave it to the detectives. May testified that appellant gave him a plastic bag of heroin and that May then removed the requested amount and gave it to the undercover detective. This evidence supports a finding that the plastic bag appellant handed to May contained the same

heroin that May gave the detectives.   Additionally, the detectives stated that appellant responded affirmatively when they concluded the transaction by asking, "Are we good?"   Thus, the totality of the evidence sufficiently supports a finding that appellant delivered, exchanged, or transferred a bag of heroin to the detectives via May.   Appellant's conviction may stand even though he did not directly hand heroin to the undercover officers and even though he did not explicitly accept any money in exchange.   Instead, appellant's conduct in transferring the heroin to May, which was then transferred to the detectives, sufficiently demonstrates that he sold or offered to sell heroin within the meaning of R.C. 2925.03(A)(1).   Consequently, we believe that the state presented sufficient evidence that appellant trafficked in heroin by selling or offering to sell heroin.

B

DRUG POSSESSION

{¶ 23} Appellant next asserts that the state failed to present sufficient evidence to support his drug possession conviction. R.C. 2925.11(A) states: "No person shall knowingly obtain, possess, or use a controlled substance * * *."   Appellant claims that the state failed to present sufficient evidence that he possessed any heroin.

{¶ 24} R.C. 2925.01(K) defines "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."   Whether a defendant knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available."   State v. Teamer, 82 Ohio St.3d 490, 492, 696

N.E.2d 1049 (1998); accord State v. Corson, 4th Dist. Pickaway No. 15CA4, 2015-Ohio-5332, ¶13.

{¶ 25} Possession may be actual or constructive.  State v. Butler, 42 Ohio St.3d 174, 175, 538 N.E.2d 98 (1989) ("To constitute possession, it is sufficient that the defendant has constructive possession * * *."); State v. Hankerson, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus.  "'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.'"  State v. Kingsland, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶13 (4th Dist.), quoting State v. Fry, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, 2004 WL 2428439, ¶39.  "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession."  Hankerson, syllabus; State v. Brown, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, 2009 WL 3236206, ¶19.  For constructive possession to exist, the state must show that the defendant was conscious of the object's presence.  Hankerson, 70 Ohio St.2d at 91, 434 N.E.2d 1362; Kingsland at ¶13; accord State v. Huckleberry, Scioto App. No. 07CA3142, 2008-Ohio-1007, 2008 WL 623342, ¶34; State v. Harrington, Scioto App. No. 05CA3038, 2006-Ohio-4388, 2006 WL 2457218, ¶15.  Both dominion and control, and whether a person was conscious of the object's presence, may be established through circumstantial evidence.  E.g., Brown at ¶19.

"Although a defendant's mere proximity is in itself insufficient to establish

constructive possession, proximity to the object may constitute some evidence of

constructive possession.  Fry at ¶40.  Thus, presence in the vicinity of

contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession."

State v. Kingsland, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶13.

{¶ 26} In the case sub judice, we believe that the state presented sufficient evidence that appellant possessed heroin. The detectives testified that after they identified themselves as law enforcement officers and ordered appellant to the ground, appellant threw a plastic bag near the refrigerator. After the officers secured appellant, who was laying on the floor close to the refrigerator, they recovered the bag and discovered that it contained heroin. Testimony that appellant threw a plastic bag near the refrigerator, and that this bag later was discovered to contain heroin, is sufficient evidence that appellant possessed the heroin when the officers initially entered the premises, but divested himself of the heroin once he realized he was about to be arrested. Thus, even though the detectives did not find heroin on appellant's person, the circumstances indicate that appellant had the heroin within his immediate physical possession immediately before his arrest. Consequently, we disagree with appellant that the state failed to present sufficient evidence to support his drug possession conviction.

{¶ 27} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.

II

MANIFEST WEIGHT OF THE EVIDENCE

{¶ 28} In his second assignment of error, appellant asserts that his convictions are against the manifest weight of the evidence. In particular, appellant contends that the detectives' testimony is uncertain because it differed from their written accounts of the transaction.

Appellant further argues that May's testimony implicating appellant is self-serving and unworthy of belief.

{¶ 29} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." Thompkins, 78 Ohio St.3d at 387.

> "'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."'"

Eastley v. Volkman, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶12, quoting

Thompkins, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th ed.1990).

{¶ 30} When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the witness credibility. A reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. State v. Issa, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); State v. Murphy, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶31. "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'" Barberton v. Jenney, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶20, quoting State v. Konya, 2nd Dist. Montgomery No. 21434, 2006–Ohio–6312, ¶ 6, quoting State v. Lawson, 2nd Dist. Montgomery No. 16288 (Aug. 22, 1997). As the Eastley court explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * *
>
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

Id. at ¶21, quoting Seasons Coal Co., Inc. v. Cleveland, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. State v. Picklesimer, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶24; accord State v. Howard, 4th Dist. Ross No. 07CA2948, 2007–Ohio–6331, ¶6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

{¶ 31} Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting Martin, 20 Ohio App.3d at 175; State v. Lindsey, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶ 32} Moreover, we observe that a verdict is not against the manifest weight of the evidence simply because the fact-finder chose to believe the state's witnesses. E.g., State v.

Chancey, 4th Dist. Washington No. 15CA17, 2015–Ohio–5585, ¶36, citing State v. Wilson, 9th Dist. Lorain No. 12CA010263, 2014–Ohio–3182, ¶24, citing State v. Martinez, 9th Dist. Wayne No. 12CA0054, 2013–Ohio–3189, ¶16.   The fact-finder is free to believe all, some, or none of a witness's testimony.   E.g., State v. Scott, 4th Dist. Washington No. 15CA2, 2015–Ohio–4170, ¶25; State v. Jenkins, 4th Dist. Ross No. 13CA3413, 2014–Ohio–3123, ¶37.

{¶ 33} In asserting that his convictions are against the manifest weight of the evidence, appellant requests that we consider the factors outlined in State v. Mattison, 23 Ohio App.3d 10, 490 N.E.2d 926 (8th Dist.1985).   The Mattison court identified the following eight factors as "guidelines" or "considerations" appellate courts should review when considering a manifest-weight-of-the-evidence claim:

> "1. The reviewing court is not required to accept as true the incredible;
> 2. Whether the evidence is uncontradicted;
> 3. Whether a witness was impeached;
> 4. What was not proved;
> 5. The certainty of the evidence;
> 6. The reliability of the evidence;
> 7. Whether a witness testimony is self-serving;
> 8. Whether the evidence is vague, uncertain, conflicting, or fragmentary."

Id. at 10.

{¶ 34} This court, however, has previously declined to adopt the Mattison factors as "'hard and fast rules.'"   State v. Chambers, 4th Dist. Adams No. 10CA902, 2011–Ohio–4352, ¶23, quoting State v. Reeves, 4th Dist. Highland No. 757 (Apr. 16, 1991); accord State v. McClain, 4th Dist. Pickaway No. 13CA17, 2014-Ohio-4192, ¶52.   Instead, we determined that the Mattison factors are mere "guidelines" that we may consider.   McClain at ¶52.

{¶ 35} In the case <u>sub judice</u>, we do not believe that appellant's conviction is against the manifest weight of the evidence. Even if May's testimony is self-serving, defense counsel ensured that the jury was well-aware of his self-interest. Thus, the jury was entitled to weigh May's testimony accordingly. We, as a reviewing court, are not well-suited to disagree with the jury's credibility assessment of May's testimony.

{¶ 36} Furthermore, even if the jury chose to reject May's testimony, the undercover detectives' testimony amply establishes appellant's guilt. The detectives witnessed appellant transfer to May, beneath the kitchen table, a plastic bag that contained a rock-like substance. May then immediately produced, from beneath the kitchen table, a plastic bag that contained heroin. From this evidence, the jury could have concluded that appellant transferred a plastic bag that contained heroin to May. Nothing suggests that the jury clearly lost its way by doing so. Consequently, appellant's drug trafficking conviction is not against the manifest weight of the evidence.

{¶ 37} Additionally, for the reasons outlined in our discussion of appellant's first assignment of error, appellant's drug possession conviction is not against the manifest weight of the evidence. Even though the detective did not write in his statement recorded shortly after the transaction that he observed appellant throw a plastic bag toward the refrigerator, the detective explained that his omission of this fact from his written report does not mean that it did not happen. Instead, the detective explained that it was an oversight. Thus, the jury was aware of the alleged discrepancy, but may have found the discrepancy insignificant. We are unable to conclude that the jury clearly lost its way by convicting appellant of drug possession.

{¶ 38} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's

second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted.   The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.   The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.   Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## <u>NOTICE TO COUNSEL</u>

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.