[Cite as *State v. Donohue*, 2018-Ohio-4819.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :      Case No.   18CA3637

    vs.                            :

KEVIN DONOHUE,                          :      DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.           :

_____

APPEARANCES:

Matthew L. O'Leary, Circleville, Ohio, for appellant[1].

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Pamela C. Wells, Ross County
Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:11-21-18
ABELE, J.

    {¶ 1} This is an appeal from a Ross County Common Pleas Court judgment of conviction

and sentence.  A jury found Kevin Donohue, defendant below and appellant herein, guilty of

complicity to the illegal manufacture of methamphetamine and aggravated possession of drugs.

    {¶ 2} Appellant assigns the following error for review:

> "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST
> WEIGHT OF THE EVIDENCE."

---

[1]  Different counsel represented appellant during the trial court proceedings.

{¶ 3} On May 5, 2017, the grand jury returned an indictment that charged appellant with one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041. Appellant entered a not guilty plea. On May 19, 2017, the state filed a superceding indictment that charged appellant with (1) complicity to illegal manufacture of drugs in violation of R.C. 2923.03/2925.04, and (2) complicity to aggravated possession of drugs in violation of R.C. 2923.03/2925.11. Appellant once again entered not guilty pleas.

{¶ 4} At trial, Ross County Sheriff's Deputy Ron Johnson testified that on April 15, 2017, he observed a blue Ford Contour drive behind a gas station that was closed at that time. Johnson stated that when he stopped the Ford, he found appellant seated in the driver's seat and a passenger, who appeared to be asleep or unconscious and later identified as Michael Jones, seated in the passenger seat with a hypodermic needle on his lap. When Johnson opened the passenger door, he also noticed a strong chemical odor and observed items on the floor board consistent with the manufacture of methamphetamine. Johnson testified that he removed Jones from the vehicle, searched him, and placed him in his cruiser. Deputy Johnson also removed from Jones' left front pocket two zip lock bags (one bag also had two additional bags inside of it). One bag contained a white and reddish substance with red flakes in the powder, and the other bag contained white powder.

{¶ 5} After placing Jones in the cruiser, Deputy Johnson removed appellant from the driver's seat. When Johnson asked appellant about the bottles on the floor board, appellant stated that he did not know what they were. When Johnson asked appellant about the strong chemical odor, appellant said "he smelled it also." Johnson then placed appellant in the cruiser and radioed for detectives to respond to the scene due to the active meth lab.

{¶ 6} After securing the scene, Deputy Johnson testified that he returned to the cruiser and asked appellant about ownership of the vehicle. Appellant said that the car is his, but registered to his passenger, "a Tony Gearing I believe." When Johnson inquired about appellant's relationship to the passenger, appellant told him that he "had only met him a few days ago and that he was driving around, running errands, taking him places," and that appellant received payment for this activity.

{¶ 7} Later, appellant asked Deputy Johnson to come to the cruiser and, once again, gave the same information about his relationship with Jones. Johnson also testified that appellant stated "I have some medication in my backpack in there." Further, the body camera video, submitted as State's Exhibit 21, shows that appellant referred three times to the chemical smell in his car, and once referred to the odor as "smelling like paint thinner."

{¶ 8} Ross County Sheriff's Deputy Craig Montgomery testified that after he arrived at the scene, he observed the blue Ford and learned that the occupants had been secured in Deputy Johnson's cruiser. When Montgomery inspected the Ford, he explained to the jury that he found two bottles, one green and one clear, capped and sitting on the passenger side floor. Montgomery testified that the bottles appeared to be methamphetamine generators. In addition, Montgomery found lithium batteries with cold packs, items usually associated with the manufacture of methamphetamine. Further, Montgomery testified that he noticed a strong chemical odor when he approached the vehicle. While Deputy Montgomery and Johnson waited for detectives to arrive, Johnson handed Montgomery two clear plastic bags with a "white powdery substance." Montgomery field tested one bag for methamphetamine and it tested negative. The two deputies then gave the bags to the detectives for further testing.

{¶ 9} Ross County Sheriff's Office Detective Chris Davis testified that he was assigned to the

US 23 Major Crimes Task Force and, after he arrived at the scene, he found the two bottles that he believed to be active "one pot meth labs." Davis noticed an ammonia chemical odor, associated with the manufacture of methamphetamine, and one bottle resembled a 20 oz Mt. Dew bottle and the other a clear bottle with an orange lid that resembled a Gatorade bottle. Davis explained that both bottles contained liquid, a white sludge at the bottom, black specks with lithium strips and solvated electrons, all consistent with the manufacture of methamphetamine. Davis also indicated that he collected a bottle of drain opener inside of a plastic bag.

{¶ 10} Detective Davis also testified that he found appellant's black backpack in the Ford's backseat that contained ice compress cold packs, an aerosol can, green plastic tubing, another plastic container, a plastic bag, and a trash bag. Davis stated that in a plastic bag inside the backpack he found a red funnel, blue shop towels, coffee filters, a starting fluid aerosol can, a bottle of drain opener, a spatula, salt, a pipe cutter and bio beads.

{¶ 11} Ross County Sheriff's Office Detective Jason Gannon testified that he is assigned to the US 23 Major Crimes Task Force and has been trained in basic clandestine labs and drug recognition, including methamphetamine labs. Gannon also completed a DEA class for packaging and handling materials for transport. Gannon testified about the two bottles that appeared to be active methamphetamine labs in the front passenger side, along with an "extremely strong odor of ammonium gas," and explained the steps involved in the one pot method for the manufacture of methamphetamine. In addition, Gannon stated that the vehicle's registration indicated that the vehicle is registered to appellant and includes the license plate number.

{¶ 12} Ohio Bureau of Criminal Investigation Forensic Scientist Stanton Wheasler received certain items of evidence from the case: "one piece of evidence involved a white powdery substance,

and then the other two pieces of evidence involved vials containing a liquid substance." Wheasler testified that the white powdery substance in the two clear plastic bags is actually pulverized tablets that contain pseudoephedrine. Wheasler also tested the other five vials that contained the contents of the two bottles found in the vehicle and determined that each vial contained methamphetamine, with the weight of the contents of the vials approximately 166.73 grams.

{¶ 13} After a one and a one half-day trial, the jury found appellant guilty on counts two and three. As to count one, the trial court declared a mistrial because the jury could not reach a unanimous verdict. After the trial court determined that counts two and three merged, the state elected to proceed on count two and the court sentenced appellant to serve six-years in prison with a three-year mandatory period of postrelease control. This appeal followed.

{¶ 14} In his sole assignment of error, appellant asserts that his conviction is against the manifest weight of the evidence. "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Burris*, 4th Dist. Athens No. 16CA7, 2017-Ohio-454, ¶ 25, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, ¶ 11 (1997) and *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *State v. Dunn*, 4th Dist. Jackson No. 15CA1, 2017-Ohio-518, citations omitted. Also, a reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence

weighs heavily against the conviction.'" *Thompkins*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000) and *State v. Waller*, 4th Dist. Scioto No. 15CA3683, 2016-Ohio-3077, ¶ 20.

{¶ 15} In the case sub judice, the jury found appellant guilty of complicity to the illegal manufacture of drugs in violation of R.C. 2923.03/2925.04. R.C. 2923.03 provides: "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * (2) Aid or abet another in committing the offense." To find appellant guilty of complicity, the jury must find, beyond a reasonable doubt, that appellant knowingly aided or abetted in the manufacture, or otherwise engage in any part of the production of a controlled substance. R.C. 2925.04(A). To aid and abet is "'[t]o assist or facilitate the commission of a crime, or to promote its accomplishment.'" *State v. Johnson*, 93 Ohio St.3d 240, 243, 754 N.E.2d 796 (2001), quoting Black's Law Dictionary (7th Ed.1999) 69. "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *Johnson* at syllabus.

{¶ 16} Generally, an aider or abettor's criminal intent may be shown by either direct or circumstantial evidence and "can be inferred from the presence, companionship, and conduct of the defendant before and after the offense is committed." *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, 849 N.E.2d 286, ¶ 13, citing *Johnson*, *supra; State v. Lett*, 160 Ohio App.3d 46, 2005-Ohio-1308, 825 N.E.2d 1158, ¶ 29. Although presence at the scene of the crime by itself will not constitute sufficient evidence of complicity, *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d

1025 (1982), "[t]his rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission." *Johnson* at 243; *accord State v. Phillips*, 9th Dist. Summit No. 27552, 2017-Ohio-1186, ¶ 19.

{¶ 17} Turning to the facts in the case sub judice, after our review of the record, including the witness testimony and exhibits, we believe that the prosecution presented overwhelming evidence to establish appellant's guilt. Detectives Gannon and Davis, along with Deputies Johnson and Montgomery, testified about the active meth lab in appellant's car during the time that appellant drove the vehicle. The overwhelming odor, as the witnesses indicated, is also indicative of an active methamphetamine lab. The evidence reveals that appellant stated three times that he smelled the overwhelming chemical odor. Also, appellant's passenger, seated next to him in the vehicle, had a syringe in his lap. Most incriminating of all, appellant's backpack contained various chemicals and paraphernalia used in the manufacture of methamphetamine. Appellant acknowledged his ownership of the backpack when he asked Deputy Johnson to retrieve his medication and stated "I have some medication in my backpack in there." Appellant also admitted that the passenger had paid him, over the course of a two-day period, to drive him to run errands and collect items. Detectives also testified that it usually takes thirty to ninety minutes to manufacture methamphetamine, and requires multiple chemicals, added at certain times and in a certain order. Obviously, the evidence reveals that appellant sat next to his passenger while he manufactured meth with items from appellant's backpack. After reviewing this evidence, the inescapable conclusion is that appellant participated and shared criminal intent in the manufacturing of methamphetamine.

{¶ 18} Appellant does concede that the strongest evidence of his involvement is his admission that his backpack contained certain items that belonged to him. Appellant, however,

urges this court to consider what was not proven - specifically, that the jurors could not reach a verdict as to appellant's guilt for the charge of illegal assembly or possession of chemicals for the manufacture of drugs.   In asserting that his conviction is against the manifest weight of the evidence, appellant cites the *State v. Mattison*, 23 Ohio App.3d 10, 490 N.E.2d 926 (8th Dist.1985) factors identified as "guidelines" or "considerations" that appellate courts should review when considering a manifest weight of the evidence claim:

> "1.  The reviewing court is not required to accept as true the incredible;
> 2.  Whether the evidence is uncontradicted;
> 3.  Whether a witness was impeached;
> 4.  What was not proved;
> 5.  The certainty of the evidence;
> 6.  The reliability of the evidence;
> 7.  Whether a witness testimony is self-serving;
> 8.  Whether the evidence is vague, uncertain, conflicting, or fragmentary."

*Id.* at 10.

{¶ 19} This court, however, in *State v. Brooks*, 4th Dist. Ross No. 15CA3490, 2016-Ohio-3003, pointed out that we had previously declined to adopt the *Mattison* factors as "hard and fast rules."   *Brooks* at ¶ 34, citations omitted.   Thus, the fact that jury hung on count one is not, by itself, persuasive.   Moreover, appellant did not separately argue that the trial court erred by accepting inconsistent jury verdicts, so our consideration of this argument is limited to whether it bears on the weight of the evidence.   *Accord Phillips*, *supra,* at ¶ 20.   More important, for a verdict to be inconsistent, generally inconsistent responses must relate to the same count, not inconsistent responses to different counts of a multiple count indictment.   *State v. Lovejoy*, 79 Ohio St.3d 440, 683 N.E.2d 1112 (1997), paragraph one of the syllabus.

{¶ 20} In the case at bar, after our review we believe that the testimony and evidence adduced

at trial established that appellant was the driver, and registered owner, of a car that contained two one-pot active methamphetamine labs from which emanated a noxious odor that appellant admitted that he also noticed. In addition, appellant requested medication from his backpack, the same backpack that contained ice compress cold packs, green plastic tubing, a starting fluid can, a funnel, coffee filters, and other items used in the manufacture of methamphetamine. Although appellant maintained that he did not know that his passenger was manufacturing methamphetamine in his car, the jury, as the trier of fact, is free to accept or to reject any and all of the evidence and to assess witness credibility. Further, a verdict is not against the manifest weight of the evidence simply because the fact-finder opts to believe the state's witnesses. *Brooks*, *supra*, at ¶ 32, citing, *e.g.*, *State v. Chancey,* 4th Dist. Washington No. 15CA17, 2015-Ohio-5585, ¶ 36, citing *State v. Wilson*, 9th Dist. Lorain No. 12CA010263, 2014-Ohio-3182, ¶ 24, citing *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. A fact-finder is free to believe all, part, or none of a witness's testimony. *Brooks, id.,* citing *State v. Scott*, 4th Dist. Washington No. 15CA2, 2015-Ohio-4170, ¶ 25; *State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 37. Thus, in the case sub judice the jury, after hearing and observing the witnesses, obviously found the testimony of the state's witnesses credible. "It is not our job to second-guess the jury where there is evidence from which it could reach a guilty verdict; we must defer to the jury's credibility and weight determinations." *Burris, supra,* at ¶ 31. This is not an " 'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. As such, we cannot conclude, after our review of the evidence, that the trier of fact lost its way, or created such a manifest miscarriage of justice that we must reverse appellant's conviction. Rather, our review of the record reveals ample

competent, credible evidence to support the jury's conclusion.

{¶ 21} Thus, based upon the foregoing reasons, we hereby overrule appellant's assignment of

error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment is affirmed and that appellee recover of appellant the costs
herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County
Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is
temporarily continued for a period not to exceed sixty days upon the bail previously posted.   The
purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an
application for a stay during the pendency of proceedings in that court.   The a stay is continued by
this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of the
appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal
period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.
Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the
stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of
Appellate Procedure.

Harsha, J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge


NOTICE TO COUNSEL


Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.