[Cite as *State v. McPherson*, 2020-Ohio-2758.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 19CA14 |
| | : | |
| vs. | : | |
| | : | DECISION AND |
| TIFFANY J. MCPHERSON, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Brian A. Smith, Brian A. Smith Law Firm, LLC, Akron, Ohio, for Appellant.

Paul G. Bertram, III, Marietta City Law Director, and Catherine Ingram Reynolds, Marietta City Assistant Law Director, Marietta, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} This is an appeal from a Marietta Municipal Court judgment of conviction and sentence. Appellant, Tiffany McPherson, was found guilty by a jury of one count of operating a vehicle with a prohibited concentration of alcohol in her breath (hereinafter "OVI"), a first-degree misdemeanor in violation of R.C. 4511.19(A)(1)(d). On appeal, she contends that her conviction for OVI was against the manifest weight of the evidence. However, in light of our finding that McPherson's conviction was not against the manifest weight of the evidence, her

sole assignment of error is overruled.  Accordingly, the judgment of the trial court is affirmed.

## FACTS

{¶2} On February 15, 2019, Appellant, Tiffany McPherson, was arrested and charged with:  1) OVI, in violation of R.C. 4511.19(A)(1)(a); 2) assault, in violation of R.C. 2903.13; and 3) driving under a suspended license, in violation of R.C. 4510.11(A).  The affidavit filed by Deputy Matthew Brown in support of the criminal complaint stated that Brown was dispatched to 405 Greenbriar Circle, Warren Township, Washington County, Ohio on February 14, 2019.  Upon arrival he found a Jeep SUV over a hill at the intersection of Greenbriar Circle and Bramblewood Heights.  He spoke to the caller, Kim Holdren, who advised that the suspect, Tiffany McPherson, was at 230 Greenbriar Circle.  The deputy further stated in this complaint that upon speaking with McPherson, he could smell the odor of an alcoholic beverage coming from her person.  The deputy's sworn statement indicated that when asked if she had been drinking, McPherson replied that she had had a margarita with two shots of tequila, and she further admitted she had been driving the Jeep in question.  McPherson explained that she had been in an altercation with Kim Holdren, her neighbor and former friend, during which time her Jeep rolled back over the hill and was stopped by a tree.  It appears from the record that McPherson refused to undergo field sobriety testing, but later

agreed to a breathalyzer test after she was taken to the jail. The result of her BAC Datamaster test was .118.

{¶3} McPherson pleaded not guilty to the charges and requested a trial by jury. On April 19, 2019, the State filed a motion for leave to amend the complaint by interlineation, which requested that the original driving under suspension charge be amended to allege a violation of R.C. 4510.16, rather than R.C. 4510.11(A). In support of its motion, the State explained that the officer cited the wrong code section due to a typographical error. On the same date, the State also filed a motion for leave to amend the complaint to add a charge of OVI in violation of R.C. 4511.19(A)(1)(d) in light of the results of the BAC Datamaster breathalyzer test. The trial court permitted both amendments without any objection by the defense. The OVI charges proceeded to a jury trial on June 18, 2019. It appears the driving under suspension charge was submitted to the trial court for decision separately. It further appears the assault charge, which had a different case number, was handled separately.

{¶4} The State introduced several witnesses at trial, including Brooklyn Holdren (daughter of Kim Holdren), Kim Holdren, Deputy Matthew Brown, Deputy Logan Schwendeman, and Sergeant Jeffrey Farrell. McPherson testified on her own behalf, and she also called her grandfather, George Wulfert, to testify.

The State further called Deputy Brown and Kim Holdren back as rebuttal witnesses.

{¶5} Brooklyn Holdren testified that on February 14, 2019, she and her cousin were driving home and as they approached their house on Greenbriar Circle they saw McPherson sitting in her Jeep at a stop sign, in the middle of the road, yelling and screaming on her phone. She testified that they waited a couple minutes and then went around McPherson's vehicle on McPherson's passenger side and pulled into Holdren's house. She testified that she called her mom, Kim Holdren, to come out and get her because McPherson had backed up, was behind their vehicle blocking the driveway, and was yelling at them. Brooklyn testified that as her mother came out and approached her car door, McPherson ran toward her mother and started hitting her. She further testified that right at that time McPherson's Jeep rolled over the hill and hit a tree. Brooklyn took out her phone and began recording the fight. She testified that McPherson then stopped and went to her Jeep to try to move it, but that she couldn't. Brooklyn testified that she was close to McPherson during the incident and that she could smell alcohol when McPherson was yelling at her. She explained that she had never seen McPherson act that way before. Finally, she testified that law enforcement arrived approximately five to ten minutes after the time McPherson was trying to get her Jeep back up the hill.

{¶6} Kim Holdren testified next. She explained that she was at home taking a bath at about 11:45 p.m. on the night in question when her daughter called and asked her to come outside because McPherson was screaming at her and threatening her. She testified that when she went outside she saw McPherson in her car blocking the driveway and screaming at them. She stated that when she went to the passenger side to get her daughter, McPherson jumped out of her vehicle and started running towards them. She testified that McPherson's vehicle rolled over the hill as McPherson was assaulting her. She testified that she could smell alcohol when McPherson got in her face and that "[i]t was unreal." She said she didn't know what made McPherson stop, but that it was possibly because her daughter was calling law enforcement. She testified that McPherson ran to her Jeep and tried to give it gas for five or ten minutes while Brooklyn was on the phone. She stated that McPherson ended up running down the street toward her grandparents' house and that law enforcement arrived approximately three to five minutes after McPherson had been trying to start her Jeep.

{¶7} Deputy Matthew Brown, who initially responded to the incident, also testified. He testified that he arrived to find a Jeep over a hill and began looking for the occupant. He testified he saw multiple people outside the house at 405 Greenbriar, the address to which he was dispatched. He was informed that McPherson went down the road to 230 Greenbriar. Deputy Brown testified that it

took him less than one minute to drive there and that when he was approaching the door he could hear arguing coming from inside. He knocked on the door and McPherson answered. He testified that as he was talking to her he noticed an odor of alcohol on or about her person. He noted McPherson was quite upset and belligerent and asked her if she had been drinking. McPherson answered yes and stated that she had had four beers. Part of the video from the deputy's bodycam was played for the jury, however, there was no audio for a large portion of the video. When McPherson wouldn't agree to field sobriety testing, he advised her she was going to be arrested and another deputy escorted her to the cruiser. He further testified that McPherson agreed to take a breathalyzer test after they arrived at the jail and that the result was .118. He clarified that the call that night was initially received at 11:50 p.m., that he was dispatched at 11:52 p.m., and that he arrived at Holdren's residence at 11:54 p.m. On cross-examination, he conceded that he failed to note in his report that McPherson told him she had four beers that night.

{¶8} Deputy Logan Schwendeman testified next. He testified that he administered McPherson's BAC Datamaster testing. He explained that he was a certified administrator and a senior operator, and that he followed all Department of Health procedures when administering the test. He further testified that he verified the machine was properly calibrated. He testified that he could smell an

odor of alcoholic beverage on McPherson's person when she arrived at the jail that night and that McPherson was very talkative and commented that she had only had one margarita. He testified that McPherson's BAC result was .118 at the time of the test, which was at 12:52 a.m.

{¶9} Sergeant Jeffrey Farrell also testified. He explained that although he was not present when McPherson was tested, he was authorized by the Ohio Department of Health to conduct testing and calibration. He testified that he had reviewed the logbook and noted that McPherson's test results were recorded. He further testified that he verified the machine was working properly and had been properly calibrated both before and after her test. At the conclusion of Farrell's testimony, the State rested its case.

{¶10} Tiffany McPherson testified on her own behalf at trial and presented a very different scenario than that presented by Brooklyn and Kim Holdren. She testified that she lives with her grandparents and cares for them and had gone to pick up food at a nearby restaurant at approximately 9:30 on the night of the incident. She testified that she drank one margarita while she was waiting for the food. She explained that she did not have two shots of tequila in her drink, but she instead had requested a different type of tequila be put in the drink. She testified that she felt fine after drinking it, took the food home, packed her overnight bag, talked to her son and his friend, and asked to borrow her grandfather's Jeep. He

consented and so she left to go to her boyfriend's house. She testified that as she was stopped at a stop sign, she sent a text to her boyfriend. She stated that she was not in the middle of the road, and that you have to pull out to be able to see at that intersection.[1] She testified that a car came upon her and instead of passing her on her driver's side, the car passed her on her passenger side, causing her to have to swerve.

{¶11} She testified that the car pulled into a driveway where her former friend, Kim Holdren, lives. She assumed it was Kim and also assumed Kim knew it was her in the Jeep. She testified that the she backed up, but did not block anyone in, and rolled down her window and yelled to ask if Kim was in the car. When no one answered her, she got out of the car and walked over. She testified that Kim came out of the house, grabbed her, and then Kim slipped and fell. She stated Kim proceeded to kick mud in her face.[2] She testified that upon hearing Brooklyn ask her not to hurt her mom, she walked down over the hill to her Jeep and tried to move it but couldn't. She testified that she gathered her things and walked home. She further testified that she had cans of beer in her bag and that she drank two beers really quickly as she walked home. She stated once she arrived home and woke her grandfather up, she drank four more beers and even

---

[1] Although it appears McPherson was referring to a map throughout her testimony, the map is not part of the record.
[2] A video of the events that was taken on Brooklyn Holdren's cell phone was played for the jury.

had a beer in her hand when Deputy Brown came to her door. She stated that it was a while before law enforcement came to her door and disagreed with the timeframe described by the Holdrens. She explained that she was not intoxicated at the time of the incident at the Holdren residence and, at that time, she had only had one margarita nearly two hours prior. She testified that she refused to take field sobriety tests because of the way she was treated by one of the officers.

{¶12} George Wulfert, McPherson's grandfather, testified next. He testified that McPherson seemed normal and was not under the influence of alcohol when she left the house that night. He testified that when she came back home that night, she was loud, nervous, "a little bit out of it," and had a beer in her hand. He testified that she had a beer in her hand when the deputy came to the door. He testified that he believed she drank at least one or two beers at the house after she returned. He further testified that only four or five minutes passed from the time McPherson woke him up until the deputy arrived. The defense rested after Mr. Wulfert testified.

{¶13} Thereafter, the State called two rebuttal witnesses. First, Deputy Brown was called. He testified that McPherson did not have a beer in her hand when she answered the door and did not indicate to him that she had been drinking immediately prior to his arrival. He testified regarding the timeframe of the events. Specifically, he explained that the dispatch call came in at 11:50 p.m. and that one

minute and fifty seconds into the call you can hear an engine revving (which was explained to be McPherson trying to get her Jeep out of the mud). He testified he arrived at the Holdren residence at 11:53 and then found McPherson at her residence two to three minutes after that. Kim Holdren was also called as a rebuttal witness. She testified that she didn't see McPherson drinking anything when she took off running, but she could see that she was carrying a purse and a bottle of something. While she couldn't tell what kind of bottle it was, she testified that McPherson smelled like alcohol when she was assaulting her.

{¶14} The two OVI charges were submitted to the jury for deliberation. McPherson was ultimately acquitted on the charge of driving under the influence of alcohol but was found guilty of the charge of driving with a prohibited concentration of alcohol in her breath. Further, the trial court found her guilty of the driving under suspension charge. McPherson now brings her timely appeal, setting forth a single assignment of error for our review.

ASSIGNMENT OF ERROR

I.     "APPELLANT'S CONVICTION FOR OPERATING A VEHICLE WITH
       A PROHIBITED BLOOD-ALCOHOL CONCENTRATION WAS
       AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN
       VIOLATION OF ARTICLE IV, SECTION 3 OF THE OHIO
       CONSTITUTION."

LEGAL ANALYSIS

{¶15} In her sole assignment of error, McPherson contends that her conviction for OVI was against the manifest weight of the evidence. In support of this contention, McPherson argues that the evidence introduced by the State failed to demonstrate that she was legally impaired at the time she was operating her vehicle. More specifically, McPherson points to testimony that she consumed alcohol between the time she was operating her vehicle and the time she took a breathalyzer test. She also argues that the breathalyzer reading was not credible. The State contends, however, that McPherson's conviction was supported by the weight of the evidence and should not be reversed.

{¶16} "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541. A reviewing court "may not reverse a conviction when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Johnson*, 58 Ohio

St.3d 40, 42, 567 N.E.2d 266 (1991), citing *State v. Eskridge*, 38 Ohio St.3d 56,

526 N.E.2d 304, paragraph two of the syllabus (1988).

{¶17} Even in acting as a thirteenth juror we must still remember that the

weight to be given evidence and the credibility to be afforded testimony are issues

to be determined by the trier of fact. *State v. Frazier*, 73 Ohio St.3d 323, 339, 652

N.E.2d 1000, citing *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50. The

fact finder "is best able to view the witnesses and observe their demeanor, gestures,

and voice inflections, and use these observations in weighing the credibility of the

proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461

N.E.2d 1273 (1984) (per curiam). Thus, we will only interfere if the fact finder

clearly lost its way and created a manifest miscarriage of justice. Moreover, "[t]o

reverse a judgment of a trial court on the weight of the evidence, when the

judgment results from a trial by jury, a unanimous concurrence of all three judges

on the court of appeals panel reviewing the case is required." *Thompkins* at

paragraph four of the syllabus, construing and applying Section 3(B)(3), Article IV

of the Ohio Constitution.

{¶18} Here, McPherson was convicted of one count of OVI in violation of

R.C. 4511.19(A)(1)(d), which provides, in pertinent part, as follows:

(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:

* * *

(d) The person has a concentration of eight-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of the person's breath.

As set forth above, McPherson's breathalyzer test resulted in a reading of .118, which is above the per se limit and falls within the range contained in R.C. 4511.19(A)(1)(d).

{¶19} Throughout the trial, the defense argued that the main question at issue was whether McPherson was under the influence or had a prohibited concentration of alcohol in her system at the time she was driving her vehicle on the night in question. As we've already noted, McPherson was acquitted on the under the influence charge. As such, the question of whether she was under the influence at the time she was operating her vehicle is not at issue on appeal. Instead, the primary question before us is whether the jury's determination that McPherson had a prohibited concentration of alcohol in her breath at the time she

was operating her vehicle, as opposed to the time she submitted to a breathalyzer test, was against the manifest weight of the evidence.

{¶20} McPherson claims her breathalyzer result of .118, which was clearly over the legal limit, was due to alcohol she ingested after the incident with Kim Holdren that night, and that she had only had one margarita approximately two hours before she became involved in an altercation, which led to her Jeep rolling over a hill. She claims the bulk of the drinking she did that night took place during her walk back to her grandparents' house after the incident and before law enforcement arrived. She directs us to her trial testimony as well as Mr. Wulfert's testimony to support her argument.

{¶21} McPherson argues on appeal that she didn't inform Deputy Brown the beer she had been drinking took place after the incident because she thought he was there to charge her with assault, not OVI. She further argues that although the State introduced testimony indicating both law enforcement and witnesses stated she smelled of alcohol, there was no testimony regarding from where the smell was originating or the intensity of the smell. She raises multiple additional arguments that primarily relate to the question of whether she appeared to be under the influence of alcohol at the time of the incident. However, because she was acquitted on that charge, we conclude these arguments are not relevant on appeal. Whether McPherson appeared to be under the influence of alcohol ultimately has

no bearing on whether she tested above the legal limit. She also argues that both Brooklyn and Kim Holdren had a motive to testify unfavorably toward her.[3]

{¶22} As to the breathalyzer tests results, however, McPherson argues, for the first time on appeal, that "[t]he State's evidence with respect to the breathalyzer itself was also not credible." She argues the officer who administered the test did not calibrate the machine either before or after her test, and that the deputy who did the calibrations was not on duty at the time she was tested. She further argues that Deputy Schwendeman's qualifications to administer the test were in question because he testified he was no longer a senior operator at the time of trial. None of these arguments were raised at the trial court level. Moreover, McPherson did not object to the admission of the breathalyzer test results at trial. Thus, to the extent McPherson is arguing that the deputies' testimony regarding the testing should not have been allowed or that the breathalyzer test results should not have been admissible, the arguments are waived. It is well-settled law in Ohio that appellate courts will not consider as error issues that are raised for the first time on appeal. *State v. Osborne*, 4th Dist. Adams No. 18CA1064, 2018-Ohio-3866, ¶ 15, citing *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210, 436 N.E.2d 1001 (1982); *see also Ohio Performance, Inc. v. Nelson*, 4th Dist. Scioto No. 94CA2226, 1995

---

[3] Although it was never elaborated upon, it appears McPherson had accused Kim Holdren of stealing $30,000.00 from her grandparents. This allegation is what caused the rift in the friendship.

WL 103634, (Mar. 7, 1995) ("It is axiomatic that a litigant's failure to raise an issue in the trial court waives the litigant's right to raise that issue on appeal. * * * Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process.").

{¶23} Here, the record before us includes evidence that McPherson drove erratically, left her vehicle in the street, engaged in a physical altercation with a neighbor, and allowed her own vehicle to roll over a hill and hit a tree. There is witness testimony indicating there was a smell of alcohol coming from McPherson as she was yelling at the Holdrens and McPherson admitted she had consumed alcohol prior to the incident. Although she testified she had only consumed one margarita prior to the incident, the arresting officer testified she told him she had consumed four beers, without any explanation that it was after the incident. Furthermore, there was testimony that she told the officer who administered her breathalyzer that she had consumed a margarita. Additionally, there is evidence in the record regarding the manner and method in which her breathalyzer test was administered, and there was no objection to the admission of the test results.

{¶24} As we have already explained, the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier*, *supra*, at 339, citing *State v. Grant*, *supra*, at 477. The jury, as the trier of fact, is free to accept or to reject any and all of the evidence and to

assess witness credibility. Further, a verdict is not against the manifest weight of the evidence simply because the fact finder opts to believe the State's witnesses. *State v. Brooks*, 4th Dist. Ross No. 15CA3490, 2016-Ohio-3003, ¶ 32, citing *State v. Chancey*, 4th Dist. Washington No. 15CA17, 2015-Ohio-5585, ¶ 36, citing *State v. Wilson*, 9th Dist. Lorain No. 12CA010263, 2014-Ohio-3182, ¶ 24, citing *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. A fact finder is free to believe all, part, or none of a witness's testimony. *Brooks* at ¶ 32, citing *State v. Scott*, 4th Dist. Washington No. 15CA2, 2015-Ohio-4170, ¶ 25; *State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 37. Thus, in the case sub judice, the jury, after hearing and observing the witnesses, obviously found the testimony of the State's witnesses credible. "It is not our job to second-guess the jury where there is evidence from which it could reach a guilty verdict; we must defer to the jury's credibility and weight determinations." *State v. Burris*, 4th Dist. Athens No. 16CA7, 2017-Ohio-454, ¶ 31. Furthermore, we cannot conclude this is an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, *supra*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶25} As such, after review of the record, we cannot say that the jury lost its way or created a manifest miscarriage of justice when it found McPherson guilty of OVI in violation of R.C. 4511.19(A)(1)(d). Accordingly, we find that

McPherson's conviction was not against the manifest weight of the evidence.  We

therefore overrule McPherson's sole assignment of error.


                                        **JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hess, J. concur in Judgment and Opinion.

For the Court,


_____
Jason P. Smith
Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**